[No. 17267. Department Two. October 4, 1922.]

# First National Bank of Ritzville *et al.*, *Respondents,* v. White-Dulany Company, *Appellant.*[1]

Chattel Mortgages (27)—Statutes (73)—Recording—"May" or "Must." Rem. Comp. Stat., § 3785, providing that a chattel mortgage to secure the sum of $300 or more "may" be recorded, but such mortgage must be filed and indexed, is not mandatory, but optional as to the recording, in view of other provisions for the filing and indexing of any chattel mortgage.

Chattel Mortgages (40)—Lien of Mortgage—Priorities. A general lien through the pledge of wheat in a warehouse by the mortgagor thereof, does not destroy the lien of the mortgage.

Same (37, 40)—Lien of Mortgage—Scope and Extent—Priorities. A warehouseman's lien for the storage of wheat is subordinate to a prior chattel mortgage upon the crop, duly filed as required by statute.

Same (38)—Lien—Waiver of Lien—Ratification. A chattel mortgagee is not estopped to assert the priority of his mortgage on a crop of wheat over a warehouseman's lien by the fact that, when the wheat receipts were issued, the warehouseman placed a notation on some of them as to the amount of advances that had been made.

Accord and Satisfaction (3, 9)—Part Payment—Acceptance of Check—Evidence. There is no accord and satisfaction of the amount due on a chattel mortgage on a crop of wheat by the fact that a check was issued, accepted, and cashed for the amount received on sale of the wheat and surrender of the warehouse receipts issued, where it was merely accompanied by a statement of the account.

Appeal from a judgment of the superior court for Adams county, Truax, J., entered January 9, 1922, upon findings in favor of the plaintiffs, in an action for conversion, tried to the court. Affirmed.

*Adams & Miller* and *Hastings & Stedman* (*Donald G. Graham,* of counsel), for appellant.

*G. E. Lovell,* for respondents.

[1]Reported in 209 Pac. 861.

HOLCOMB, J.—The gist of respondents' cause of action, as alleged in their complaint, is that:

"Plaintiffs are a banking corporation under the national banking laws of the United States; that, in the year 1921, a mortgage was executed by V. B. Bennington to plaintiffs, covering all of the crops of wheat grown on the farm of the mortgagor in Adams county, Washington, during the season of 1921; that the mortgage was filed for record in the office of the auditor of Adams county, Washington, in due time, and was a lien upon the grain described therein; that, in the year 1921, there were grown 5,638 bushels of wheat, which were delivered to the Milwaukee Grain Elevator Company at Lind, and 17 warehouse receipts were issued therefor; that the said warehouse receipts were delivered to defendant and the grain evidenced thereby was paid for, except the sum of $1,076.40, which the defendant retained for its own use; that demand had been made on the defendant for the payment of said sum, but defendant had refused to pay the same or any part thereof."

Appellant, by its answer, admitted that demand had been made for the payment of $1,076.40, and denied the other allegations of the complaint. An affirmative defense was also alleged by appellant containing a number of transactions and circumstances by reason of which appellant alleged that respondents had waived any claim which they may have had by virtue of any chattel mortgage and are estopped from claiming the grain from appellant. Respondents' reply was a general denial.

A number of propositions are advanced by appellant, the second of which we will dispose of first, which is that respondents' mortgage is invalid because not recorded as required by statute.

Section 3785, Rem. Compiled Statutes, is relied upon, reading as follows:

".A mortgage given to secure the sum of three hundred dollars or more exclusive of interest, costs and attorney's or counsel fees may be recorded and indexed with like force and effect as if this act had not been passed, but such mortgage or a copy thereof must be filed and indexed as required by this act."

The mortgage in this case was merely filed and indexed and not recorded. It is urged that the word "may" in the statute should be construed as "must." Cases are cited holding to the view that when the sense of the entire enactment requires it, and when the statute, in view of the surrounding circumstances, indicates the purpose on the part of the legislature to enact a law mandatory in its character, it should be so construed, and that this is particularly true where the rights of third persons are involved, citing: *People v. Common Council of Brooklyn,* 22 Barb. (N. Y.) 404; *Kansas City W. & N. W. R. Co. v. Walker,* 50 Kan. 739, 32 Pac. 365; *Supervisors v. United States,* 4 Wall (U. S.) 435; *Ticknor v. McClelland,* 84 Ill. 471, and cases cited in 5 L. R. A. (N. S.) 340. But we do not view this statute as being one which should be declared mandatory instead of optional because of circumstances indicating a purpose on the part of the legislature to enact a mandatory statute, nor because the rights of third persons are involved.

Other provisions of the statute provide for the filing and indexing in the office of the county auditor of any chattel mortgage, and that, from the time of filing and indexing thereof, every such mortgage shall be held and considered full and sufficient notice *to all the world* of the existence and conditions thereof. While § 3785, Rem. Comp. Stat., *supra,* provides that a mortgage for the sum of $300 or more, exclusive of interest, etc., may be recorded and indexed, it also requires that, after every such mortgage is recorded and indexed, a copy

thereof must be also filed and indexed as required by this act.

The evident purpose of § 3785, *supra,* was to protect the mortgagee as to the custody of the instrument, and hence provides that, if a chattel mortgage be given for $300 or more, it may be recorded and also filed and indexed, and there is thus less danger of its being lost or stolen.

We therefore think the legislature intended only to make it optional as to whether a mortgage for $300 or more should be recorded as well as filed and indexed, and not mandatory.

The first proposition stated by appellant is that it held the wheat under a general lien. It may be conceded that there was a pledge made to appellant and that the mortgagor owed it money for which he might pledge the wheat, but a general lien or a pledge of a chattel does not destroy the validity of a prior lien. In that respect the case is similar to and controlled by our decisions in *German-American State Bank v. Seattle Grain Co.,* 89 Wash. 376, 154 Pac. 443, and *Bollen v. Wilson Creek Union Grain & Trading Co.,* 90 Wash. 400, 156 Pac. 404.

The third contention of the appellant is that the warehouseman's lien has priority under the statute over the lien of respondent's mortgage. The mortgage of respondent antedated any delivery of wheat to the warehouseman; it was filed within ten days after its execution and acknowledgment and it was in every way a good and valid chattel mortgage.

When such are the facts concerning the chattel mortgage, we said in *Levitch v. Link,* 95 Wash. 639, 164 Pac. 233, that when the mortgage is properly executed and filed as required by statute, it is valid as against any subsequently asserted lien of whatever character. See,

also, *Rothweiler v. Winton Motor Car Co.*, 92 Wash. 215, 158 Pac. 737.

The fourth and fifth contentions of appellant are akin, and are in effect that respondents, under the circumstances of this case, are estopped to assert priority of the mortgage lien, and that plaintiffs must be held to have ratified the act of Bennington in subjecting the mortgaged property to appellant's lien and are bound thereby. We see nothing in the evidence or the circumstances of this case which will sustain either of the foregoing contentions. The only circumstance in the evidence that might be construed as a ratification by appellants is that, when the wheat receipts were issued by appellants, they wrote on some four or five of them out of seventeen a notation somewhere upon the receipts to the effect that advances to the amount of $1,076 had been made. Such notation, even if noticed by the banks when the receipts came into their hands, was not notice of any prior lien or right to a lien. There is nothing in the record of any kind to show that the mortgagee either expressly or impliedly waived the mortgage lien in favor of appellant or any one else.

The sixth contention of appellant is that, under the facts, there is a valid accord and satisfaction. It is argued that the acceptance of the check for the wheat purchased, after deducting the amount owing according to the terms of the receipt, together with the cashing of the check without objection, constituted an accord and satisfaction. What constitutes the accord and satisfaction, in that the check which was given by appellant itself said it was in full settlement, was made plain by the statement accompanying the check showing the account closed. The statement accompanying the check was simply a statement of account showing

Bennington's note for $1,000 and interest, $76.40, and a check for $4,146.15, totaling $5,222.55. The letter of transmission accompanying this check and statement simply said: "First National Bank, Ritzville, Washington. Gentlemen: Enclosed please find our check No. 2,851 & statement for 17 whse. receipts, surrendered." (Signature.)

There is nothing in the above that constitutes an accord and satisfaction. *O'Connell v. Arai,* 63 Wash. 280, 115 Pac. 95; *London Guaranty & Accident Co. v. Western Smelting & Power Co.,* 117 Wash. 568, 201 Pac. 914.

The judgment is affirmed.

PARKER, C. J., HOVEY, MAIN, and MACKINTOSH, JJ., concur.