[No. 18742. Department One. January 6, 1925.]

B. F. NICHOLAS *et al., Respondents,* v. SECURITY STATE BANK, *Appellant.*[1]

MONEY RECEIVED (6)—PERSONS LIABLE—EVIDENCE—SUFFICIENCY. A bank accepting a draft for collection in payment for wheat belonging to the plaintiff, with knowledge that it belonged to the plaintiff, is liable for money had and received on collecting the draft and diverting it to other purposes.

NEW TRIAL (35)—NEWLY DISCOVERED EVIDENCE—DILIGENCE. A new trial for newly discovered evidence is properly denied, where the new evidence consisted of letters in the possession of the appellant at the time of the trial.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered October 11, 1923, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for money received. Affirmed.

*H. J. Welty* and *Neill & Sanger,* for appellant.

*Randall & Danskin,* for respondents.

PEMBERTON, J.—Respondents recovered judgment against appellant for money had and received in the amount of $1,725.90, from which judgment this appeal is taken.

[1]Reported in 231 Pac. 805.

On November 20, 1915, the respondents entered into a contract for the sale of certain real estate and personal property to Hodgson Brothers, providing in part as follows:

"Said 'purchasers' (Hodgson Bros.) shall deliver to said 'owners' (Respondents) one-half of the total crop harvested upon said land each year at the warehouse at Benge, Washington, and said 'purchasers' shall be entitled to credit for the amount of the market price of said crop, at Benge, Washington, upon any day designated by them after said crop is delivered as aforesaid, and up to and including November 20th each year, and said 'owners' shall have the right at their option to either take and hold said share belonging to them, or permit the same to be sold to third parties upon the day designated as aforesaid by said 'purchasers', and in either event it is understood and agreed that said 'owners' are to either take one-half of the crop or the amount of the selling price of one-half of the crop on a day certain to be fixed by said 'purchasers' on or before November 20th of each year, hereafter, and in case no day is designated as aforesaid by said 'purchasers,' it is hereby mutually agreed that the market price at Benge, Washington, on November 20th of each year, shall determine the credit to which said 'purchasers' are entitled upon the balance of the purchase price as hereinafter designated, and said 'purchasers' shall have the right to dispose of their one-half of the crop at any time and to any person determined upon by them."

Under the terms of this contract of sale, the respondents claimed to own one-half of the wheat grown upon the real estate.

In the fall of 1921, Hodgson Brothers were indebted to the appellant in the amount of $6,500, secured by chattel mortgage upon the 1921 crop. On November 19, 1921, appellant entered into an arrangement with Hodgson Brothers whereby it agreed to accept $3,500 as its share of the 1921 crop, and thereupon a renewal

note of $3,000 was given secured by a mortgage from Hodgson Brothers on their 1922 crop. This renewal mortgage, in addition to covering the 1922 crop, also covered the wheat on hand for feed and seed, providing as follows: "Together with seed wheat necessary to seed the above land and '1,000' sacks of wheat for seed in spring, also all summerfallow to be made in summer of 1922."

Hodgson Brothers sowed 835 acres of the 1922 crop, fed their stock during the winter of 1921-1922 out of the wheat from the 1921 crop, and on June 23, 1922, there were remaining 1,654 bushels of wheat. Both Hodgson Brothers and the respondents understood that this wheat was the property of respondents under the terms of the contract giving them one-half the crop grown upon the premises. As provided in the contract, Hodgson Brothers sold this wheat to the White-Dulaney Company, and a draft therefor was sent to the Spokane & Eastern Trust Company for collection. The appellant bank, claiming the wheat in question under its mortgage, notified the White-Dulaney Company to stop payment on the draft. After an extended controversy, the appellant agreed with Hodgson Brothers that the draft should be paid to its bank and be held by the bank for a short period before turning it over to respondents, to permit Hodgson Brothers to negotiate with respondents for a portion of this money to pay the expense of harvesting the then growing crop. With this understanding, the draft was sent to the appellant bank.

It is contended by respondents that the day on which the appellant bank received this draft in question it violated its agreement with Hodgson Brothers and paid it upon other notes held by the bank against Hodgson Brothers. Upon the bank's refusal to pay

this amount either to Hodgson Brothers or to respondents, this action was instituted for money had and received.

It is claimed by the appellant that the court erred in denying its motion for an instructed verdict and in overruling its motion for judgment notwithstanding the verdict.

It is the contention of appellant that the contract is merely an executory contract to deliver half of the crop of wheat. It is contended that the vendor under this contract had no title to the wheat, under the holding in *Union Farm Land Co. v. Isaacs,* 106 Wash. 168, 179 Pac. 84; *Lynch v. Sprague Roller Mills,* 51 Wash. 535, 99 Pac. 578.

The appellant wrote the following letter with reference to the wheat covered by its mortgage:

"Replying to your letter of the 19th, will advise that we are cognizant of the fact that one-half of the wheat on the Hodgson place belongs to Nicholas and Codd, and we have no claim on it. However, we have a mortgage on the proportion that belongs to Loy E. Hodgson and we cannot permit any of this proportion of the wheat being sold unless the money is paid to us.

"We are perfectly willing that the wheat be divided and that Messrs. Nicholas and Codd receive their proportion, on which we have no claim whatever. However, we want to be assured that there is a proper division made and that our interests will not be jeopardized."

Appellant, at the time of the execution of its mortgage, had knowledge of the fact that respondents were the owners of one-half of the wheat grown upon the premises, and thereafter denied any intention to hold this wheat under its mortgage. The mortgage of appellant was on that portion of the 1921 crop required for seed and feed. The wheat in question remained in

the hands of Hodgson Brothers after the amount required for feed and seed had been used for that purpose and was not covered by the mortgage. When appellant accepted this draft, it accepted it with the knowledge that it belonged to respondents, and having converted it to other purposes, the respondents are entitled to recover the amount of the draft. The trial court properly denied the motion for nonsuit.

It is insisted that the court erred in refusing to grant a new trial. A motion for new trial was made on two grounds, insufficiency of the evidence to justify the verdict, and error in law occurring at the trial and excepted to at the time by the defendant. Ten days after the service of the motion for a new trial, a motion was served asking for leave to file an amended motion for a new trial, and adding thereto "surprise which ordinary prudence could not have guarded against, and newly discovered evidence which became material for the defendant to rebut the testimony of Loy Hodgson, which defendant could not have discovered with reasonable diligence and produced at the trial." The motion is supported by the affidavit of Mr. Moore, the cashier of appellant bank. The respondents objected to the amended motion for a new trial and the court stated in his memorandum opinion:

"I cannot see the materiality of the letters from Hodgson, or that they will or can influence in the slightest a verdict in case of a new trial, but will permit them to be filed that they may be in the record upon appeal."

These letters in question were in possession of the appellant at the time of the trial and would not, therefore, be ground for the granting of a new trial. *Citizens' Nat. Bank v. Ariss,* 68 Wash. 448, 123 Pac. 593; *Armstrong v. Yakima Hotel Co.,* 75 Wash. 477, 135 Pac. 233; *Woods v. Globe Navigation Co.,* 40 Wash. 376, 82 Pac. 401. The evidence being sufficient to support the

verdict of the jury, the motion for a new trial was properly denied.

The judgment will be affirmed.

MAIN, C. J., BRIDGES, MACKINTOSH, and TOLMAN, JJ., concur.