[No. 27330.  Department Two.  March 24, 1939.]

CASHMERE VALLEY BANK, *Respondent*, v. PACIFIC FRUIT
& PRODUCE COMPANY, *Appellant*.[1]

*J. A. Adams* and *Edson Dow*, for appellant.

*J. Harold Anderson*, for respondent.

MILLARD, J.—In 1937, the Cashmere Valley Bank made loans of money to six growers of apples whose orchards are located at Cashmere and took a chattel mortgage on the growing fruit crops for the money advanced.  Each of the six fruit growers agreed to care for

[1]Reported in 88 P. (2d) 579.

the fruit by furnishing the materials and performing the services which were furnished by defendant, which seeks to deduct the cost thereof from the sale price of the mortgaged apples. The pertinent provision of the chattel mortgage reads as follows:

"And the said parties [Mortgagors] of the first part do hereby covenant and agree to and with the said party [Mortgagee bank] of the second part    .    .    . that the Mortgagors will properly and in season tend, care for and protect said crop while growing and until fit for harvest, and will properly and in season prune, spray, cultivate and irrigate the trees upon which the said crop is grown, and will properly and in season and without delay pick, pack, grade and prepare for market in conformity to the rules generally adopted in the Wenatchee Valley, the said crop as the same shall mature, and shall deliver the same properly graded and packed in such condition as to pass any inspection required for local, long distance or foreign shipment, immediately into the possession of the party of the second part, its successors or assigns at such place as may be designated by the party of the second part, to be disposed of by the party of the second part for the payment of the debt hereby secured, the same to be marketed by the party of the second part to such parties, in such manner and for such prices as shall be determined by the party of the second part.   In default of any or either of the above acts to be done by the said parties of the first part, the party of the second part, its agents, successors or assigns, may enter into the premises and take all measures in its opinion necessary for the proper protection of said crop and may retain possession thereof and care for, harvest, pick, pack and deliver the same, and all expenses so incurred and all that may be necessary in the keeping and caring of said crop, as well as the hauling, storing and delivering thereof, and all materials, paper and boxes required for packing the same shall be secured by this mortgage and shall be first payable out of the money realized out of said crop; that the said party of the second part, its agents or successors or assigns shall and may at all times enter

upon the premises and view the same and take any measures in its opinion necessary or proper for the protection of said crop or its interest therein, and may upon the harvesting of said crop take immediate possession of the same, and may haul and store the same at the expense of the parties of the first part, who, for the purpose aforesaid, do make, constitute and appoint the party of the second part, its agents or assigns, their true and lawful attorney with full power to enter upon said premises and take possession of said crop in the manner hereinbefore provided and market and dispose of the same or any part thereof, and out of the proceeds arising from the sale of said crop, first to retain the costs and charges thereof and any and all expenses by the party of the second part incurred in the care, protection, harvesting, packing, hauling or storing the same; second, to apply the residue to the payment of said note    .    .    .    , and of any or all indebtedness owing by the Mortgagors to the Mortgagee rendering the overplus, if any there be, to the said parties of the first part, or their assigns."

The chattel mortgages were in each case, as required by the statute, accompanied by the affidavit of the mortgagor that the mortgage was made in good faith. Each mortgage was duly placed of record in the office of the auditor for Chelan county.

The Pacific Fruit & Produce Company, which is engaged in the business of financing fruit growers with supplies and material necessary to grow and harvest their crops, operates commercial packing and storage warehouses at Cashmere and Dryden. At the request of each of the six growers whose crops were mortgaged to the Cashmere Valley Bank, and in accordance with the agreement of the grower mortgagor with the bank, the Pacific Fruit & Produce Company, with knowledge of the covenants and terms of the crop mortgages, furnished additional material to spray the fruit crops; and after the crops were ready for harvest, the produce company advanced funds and material

for harvesting the crop, washing and packing the fruit, and stored and sold, or purchased, the crops for an agreed price, which it is not denied was the fair market value of the fruit at the time. The produce company paid to the grower and the bank the proceeds of the sale in each instance over and above the amount the grower owed the produce company for spray materials, boxes, paper, packing, and storage.

This action was brought by the bank against the produce company as one in conversion for the value of the apples of the six growers who had mortgaged their crops to the bank. The bank conceded that the amount charged for storage should be retained by the produce company, hence the question of storage is not involved in this action. The bank refused to permit the produce company to deduct the amounts it expended for the growers at their request for spray material, packing, etc.

The cause was tried to the court, which found in favor of plaintiff and entered judgment in its favor in each of the six instances for the admitted value of the fruit up to the amount the defendant retained. From that judgment, the defendant prosecutes this appeal, which presents the sole question whether appellant produce company was entitled to retain those advances.

The trial court held that the value of the property converted at the time of its conversion was the correct measure of damages to be assessed against a converter of personal property to be paid to the holder of a chattel mortgage upon the property.

The question: Can the converter deduct from the value of the chattel the converter's charges for preservation and preparation of the same for market when such preservation and preparation for market were done by the converter at the request of the owner

mortgagor pursuant to a covenant in the chattel mortgage, of which covenant the converter had notice? was answered in the negative by the trial court.

The judgment is based on the priority of a chattel mortgage lien to a common law lien for material furnished and services performed in the care and preservation of the mortgaged chattel. The statute provides that

"A mortgage of personal property is void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, and against all subsequent purchasers, pledgees, and mortgagees and encumbrancers for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, . . ." Rem. Rev. Stat., § 3780 [P. C. § 9747].

The validity of the chattel mortgages is not challenged. Each was accompanied by the required affidavit of good faith, and all were properly and timely placed of record. The respondent did all that the law required to secure a first lien when it obtained a properly executed mortgage and filed same properly and timely in the office of the county auditor.

Any question as to the priority of a chattel mortgage, properly executed and properly and timely filed as the statute prescribes, over subsequently asserted liens, is foreclosed in this state.

In construing the above-quoted statute, we held in *Rothweiler v. Winton Motor Car Co.*, 92 Wash. 215, 158 Pac. 737, that a prior chattel mortgage on a motor truck was superior to a lien for labor performed on and storage of the truck. We said:

"In providing that a chattel mortgage shall be void as to all creditors of the mortgagor, both existing and subsequent, if certain things are not done, it effectually provided that it is good as against all creditors if the things are done."

In *Levitch v. Link*, 95 Wash. 639, 164 Pac. 233, we held that the lien of a chattel mortgage is superior to the subsequent lien of an agister, in view of the statute quoted above, and stated that

"The effect of this statute is to make such instruments valid as against any subsequently asserted lien. The language employed to effectuate this purpose is as apt as if it were provided that such instruments should be preferred over any subsequent lien of whatever character."

In *Beecher v. Thompson*, 120 Wash. 520, 207 Pac. 1056, 29 A. L. R. 699, we held that a chattel mortgage given before the performance of labor, which had increased the value of the truck, and furnishing of material upon a truck, is superior to the lien for the labor and material.

In *First Nat. Bank v. White-Dulany Co.*, 121 Wash. 386, 209 Pac. 861, we held that a warehouseman's lien for the storage of wheat is subordinate to a prior chattel mortgage upon the crop, duly filed as required by the statute.

The position urged by appellant that it was a non-wilful converter of personal property upon which a chattel mortgage existed in favor of respondent, and that, as such non-wilful converter, it was entitled to deduct from, and retain, the sale price of the chattel the expenses appellant had borne in preservation of the mortgaged property, is not sound.

In the authorities cited by appellant, in which deductions of amounts expended by converters in the preservation of the converted property from the value of the converted property, were allowed in computing the measure of damages, the expenditures were made subsequent to the conversion, or the expenditures were made innocently and under the *bona fide* and mistaken

belief of the converter that he was the rightful owner of the converted property.

Appellant's taking of the mortgaged property was not inadvertent. It knowingly took the mortgaged fruit without any right to do so. All of the expenditures of appellant were made prior to the conversion. Appellant will hardly contend that it thought the property belonged to it, in view of the fact that appellant charged the grower owners for the services performed on the fruit and for its storage. The date of the sale by appellant of the mortgaged fruit was the date of the conversion of that fruit.

As all of the expenditures were made by appellant prior to the time it converted the mortgaged fruit, the claim of appellant for deduction of the amount of expenditures made by it from the value of the fruit at the time of conversion can not be sustained, unless it be shown that appellant innocently and rightfully thought itself the owner of the fruit when it made the expenditures.

Such addition as was made to the value of the fruit prior to the conversion could certainly not have been made by the appellant as a non-wilful converter. At the request of the owners and mortgagors of the fruit, appellant, with notice and knowledge that the mortgagors were obligated by the mortgage so to do, cared for and protected the fruit; that is, in effect, the mortgagors employed or contracted with appellant to perform this work for them. Knowingly, of course, appellant furnished services and supplies for the growers' fruit and not for property which appellant claimed as its own.

The position of appellant is not in harmony with the statute and the rule (long since adopted in this state) we have consistently followed. We agree with counsel for respondent that, if we sustained the contention

of appellant, any lien-holder or creditor of a chattel mortgagor, whose right is subordinate to that of the chattel mortgagee, for materials or services furnished in the care or preservation of the mortgaged chattels, could defeat the lien of the prior chattel mortgage by simply converting the mortgaged chattel.

We have examined the authorities cited by appellant, and find they are either not out of harmony with the foregoing or are distinguishable on the facts from the case at bar.

The judgment is affirmed.

BLAKE, C. J., BEALS, GERAGHTY, and STEINERT, JJ., concur.