[No. 27756. Department Two. March 19, 1940.]

E. J. LOUDON *et al., Respondents,* v. M. D. COOPER,
*Appellant,* J. M. WADE, *Respondent.*[1]

[1]Reported in 100 P. (2d) 42.

230

 

*Palmer, Askren & Brethorst* and *B. E. Lutterman,* for appellant.

*Crollard & O'Connor,* for respondent Wade.

JEFFERS, J.—This is an appeal by defendant M. D. Cooper from a judgment entered by the superior court for Chelan county, June 9, 1938.

On January 10, 1939, M. D. Cooper commenced a chattel mortgage foreclosure action in Chelan county, by notice and sale, and thereafter the sheriff of Chelan county took into possession 1,550 boxes of apples, in the possession of J. M. Wade, who claimed to have purchased from E. J. Loudon, the mortgagor, the apples covered by the mortgage. Thereafter, it was stipulated by M. D. Cooper, the mortgagee, E. J. Loudon, the mortgagor, and J. M. Wade, intervener, that the value of the 1,550 boxes of apples was $1,100, and Wade paid this amount to the sheriff, who paid it into court. It was further stipulated that the above sum should be held in lieu of the apples until the determination of this action. The apples were thereupon released to Wade. The proceedings were then transferred to the superior court by Wade and Loudon.

In the complaint filed in the superior court, plaintiffs Loudon and wife, and intervener Wade, sought to have M. D. Cooper, defendant, restrained from proceeding with the mortgage foreclosure, and further sought to obtain a judgment to the effect that Mrs. Cooper be adjudged to be entitled to only the sum of $575.22 from the intervener.

Mrs. Cooper filed an answer and cross-complaint,

wherein she set up four purported causes of action. In the first, she asked judgment against Loudon and wife on the note signed by them, in the amount of $2,119.72, together with interest, attorney's fees, and costs; for the foreclosure of a crop mortgage given to secure the note; and for the application on such judgment of the $1,100 held by the court in lieu of the 1,550 boxes of apples. In her second cause of action, defendant sought to have foreclosed a chattel mortgage on a Ford car and Chevrolet truck, given by the Loudons to defendant to further secure the note referred to in the first cause of action. In her third cause of action, defendant alleged that the intervener converted the apples covered by her crop mortgage by selling them and putting them beyond the reach of defendant, and asked judgment against the intervener for any deficiency remaining after applying on her judgment the $1,100 and the amount received from the sale of the car and truck. In her fourth cause of action, she alleged that the intervener converted all the apples grown on the Cooper tract, and further alleged that she was the owner of twenty per cent of such crop, by virtue of a real estate contract under which Loudon and wife were purchasing the tract from her. She asked for judgment against Loudon and Wade for the value of twenty per cent of such crop.

Intervener Wade filed a reply and answer to defendant's cross-complaint, wherein he set up certain purchase agreements entered into between him and Loudon, under which he claimed to have bought the fruit crop covered by the chattel mortgage, and denied liability to defendant in any amount in excess of $575.22, which he claimed was the value of the crop at the time he purchased it from Loudon.

The cause was tried to the court on the issues as made by the pleadings.

The relevant facts are not in dispute, and may be stated as follows: On December 31, 1936, M. D. Cooper entered into a contract with E. J. Loudon, wherein Mrs. Cooper agreed to sell, and Loudon agreed to buy, a certain orchard tract in Chelan county, known as the Cooper tract, for the sum of nine thousand dollars. The contract provided that the purchaser should pay two hundred dollars in cash, and the balance of $8,800, together with interest, should be paid by the vendee delivering to the vendor, at Chelan, Washington, each year, until the full purchase price was paid, twenty per cent of all apples grown on the property, packed in standard boxes, or in bulk, at the option of the vendor, and upon the date of delivery or deliveries, the vendor should credit the vendee on the purchase price with the amount for which the apples were sold. The contract also contained the usual provisions of such contracts relative to forfeiture, etc.

On May 13, 1938, the Loudons executed a crop mortgage on the entire crop of apples to be grown during the year 1938 on the tract above described, and also on another tract known as the Baldwin tract, to secure a loan of $2,150 made by Mrs. Cooper. This mortgage, among other provisions, contained the following:

". . . and in case of failure to properly cultivate, harvest or care for said crops, the mortgagee is hereby authorized to enter on said land and do all that is necessary to properly harvest or care for such crops, at our expense, and apply the net amount realized therefrom in payment of said indebtedness."

The mortgage further provided:

"We, the mortgagors, agree to properly cultivate the orchards on the said premises and care for said crops of apples in a good orchardmanlike manner, and to do all things that are necessary and proper for the protection thereof."

The above mortgage was properly executed and filed for record in Chelan county, May 19, 1938. On May 13th, for the purpose of further securing the loan of $2,150, the Loudons executed and delivered to Mrs. Cooper a chattel mortgage on a Ford sedan car and a Chevrolet truck. This mortgage was properly executed and filed for record, May 19, 1938.

In all the above transactions, Mrs. Cooper, who lives in Seattle, was represented by Mr. Brethorst, of the firm of Palmer, Askren & Brethorst, and all money paid to Loudon was paid through Mr. Brethorst. On August 4, 1938, Mr. Brethorst wrote Mr. Loudon, enclosing a check for one hundred dollars and informing him that, with this remittance, he would have received $2,119.72, leaving a balance of $30.28, and further informing Mr. Loudon that Mr. Brethorst understood that he would be able to finance the balance of the operations through a friend. Mr. Brethorst requested that he be given full particulars as to the crops, and how the balance of the operations was to be financed.

On August 8th, Loudon wrote Mr. Brethorst, and from this letter we quote:

"I saw Mr. J. M. Wade of Jim Wade Fruit Co. today —8th of Aug. & ask him to make shure where I stood before I commited myself tho I was sure in my mind it would work out as I intended."

The letter then continues with statements relative to the spraying; that it would be difficult to clean the apples at packing time; and that Mr. Wade would see him through. We again quote: "The crop is good & up to now quite clean with a few stings which are healing over." The letter then continues to the effect that there would be about 11,000 packed boxes on the two tracts.

On August 26, 1938, Loudon, having expended all the money obtained from Mrs. Cooper, and being without

funds to harvest the crop, entered into what is termed "Memorandum of Fruit Purchase Agreement," with J. M. Wade, by the terms of which agreement Loudon purported to sell to J. M. Wade all the Winter Banana apples on the Baldwin tract, as they existed on the trees. Payment was to be made at a specified price per ton for different grades, on the basis of the number of boxes which would be packed out, the cost of harvesting, hauling, washing, sorting, and loading to be deducted from the quoted price, and payment to be made upon completion of the packout. Wade retained the right to apply the purchase price to the satisfaction of any liens against the crop.

On September 20, 1938, a similar purchase agreement was made, whereby Loudon purported to sell to Wade all the commercial apples on both the Cooper and Baldwin tracts. Payment was to be made on the basis of varieties, grades, and sizes that the crop should pack out, and on the basis of certain stated prices less the cost of harvesting, hauling, and packing the fruit; payment to be made upon completion of the packout.

Apparently not having heard from Loudon since his letter of August 8th, on November 30, 1938, Frances Cooper, a daughter of M. D. Cooper, wrote Mr. Loudon in regard to certain real estate taxes and water assessments for 1937, and concluded her letter as follows:

"We would also like to know who is selling the 1938 crop of apples and how many of them have been sold and at what price."

The crop was harvested and all expenses paid by Mr. Wade. It does not appear that defendant was informed of the sale to Wade until after the apples had been packed. Defendant then made demand upon Wade, basing her right to do so on her mortgage and contract. Wade thereupon issued a check, made out jointly to Mrs. Cooper and Loudon, for $575.22, which

amount represented the value of the apples according to the prices fixed in the purchase agreement, after deducting the expense incurred in harvesting and packing the crop. This check, endorsed by Loudon, was sent to defendant, together with copies of the contracts and a statement of the expense incurred by Wade. Defendant refused to accept the check. Wade sold all the apples to persons unknown to defendant, except the 1,550 boxes hereinbefore mentioned, which were still in his possession at the time the foreclosure proceedings were commenced. It appears that the crop was heavily worm-infested at the time it was purchased by Wade.

On June 9, 1939, the court entered findings of fact, conclusions of law, and judgment. Defendant was given judgment against Loudon and wife on the note for the sum of $2,119.72, together with interest and an attorney's fee of $125. Foreclosure of the crop mortgage was denied, upon the theory that Wade had purchased the fruit on the trees, and that the conversion took place at that time; that Wade was only liable for the value of the fruit at the time of conversion. Defendant was given judgment against intervener for $575.22, which the court found to be the fair value of the apples at the time of the purchase by Wade. The judgment further provided for foreclosure of the chattel mortgage on the car and truck, and also gave defendant judgment on her fourth cause of action against the Loudons only.

Mrs. Cooper has appealed from that part of the judgment adverse to her contentions, and assigns error on the refusal of the court to permit a foreclosure of her crop mortgage on the apples which were still in the possession of intervener, and which were seized by the sheriff. She also contends that the court erred in not directing that the sum of $1,100 be applied on appel-

lant's judgment against the Loudons; that the court erred in failing to grant appellant judgment against the intervener on her third cause of action for the unsatisfied portion of the judgment, and limiting the amount of appellant's recovery against the intervener to $575.22; that the court erred in refusing to grant judgment against the intervener on her fourth cause of action.

It is admitted that respondent Wade not only had constructive knowledge of appellant's mortgage, but that he had actual knowledge, and that the purchase of the fruit was made with this knowledge.

We think it apparent from this record that appellant was never asked to finance the harvesting of this crop, and that she did not know of the sale to respondent Wade until after the fruit had been picked and packed. There was no attempt made to obtain any waiver of appellant's rights under her mortgage.

The first question which must be answered is: When was the fruit converted by respondent Wade? Appellant contends the conversion did not take place until Wade sold the apples and placed them beyond the reach of appellant's mortgage, or, in other words, destroyed her lien; while respondent contends the conversion took place at the time Wade bought the fruit, and that therefore appellant is not entitled to the value of the apples as enhanced by the expenditures of respondent in picking, packing, etc.

We think the rule is well established in this state that title to the property covered by a chattel mortgage remains in the mortgagor, and that the mortgagee has only a lien thereon. *Parks v. Yakima Valley etc. Ass'n,* 194 Wash. 380, 78 P. (2d) 162. This being true, we think it must follow that the mortgagor had a right to transfer the legal title to the mortgaged property, subject, however, to the mortgage, and that such

a transfer alone did not give the mortgagee the right to bring an action in conversion, as long as the chattels were still in existence and could be subjected to the lien of the mortgage.

We think it also the rule in this state that, where a third party converts property covered by a chattel mortgage, properly executed and filed, the mortgagee may sue such converter and recover the value of the property as of the time of conversion, up to the amount of the mortgage. *Brotton v. Langert,* 1 Wash. 227, 23 Pac. 803; *German-American State Bank v. Seattle Grain Co.,* 89 Wash. 376, 154 Pac. 443; *Bollen v. Wilson Creek Union Grain Co.,* 90 Wash. 400, 156 Pac. 404; *John Smith Co. v. Hardin,* 133 Wash. 194, 233 Pac. 628; *Union State Bank v. Warner,* 140 Wash. 220, 248 Pac. 394; *Cashmere Valley Bank v. Pacific Fruit & Produce Co.,* 198 Wash. 363, 88 P. (2d) 579. We are of the opinion that the last cited case is especially applicable herein, as to the time when the conversion took place, which the cited case held to be at the time the apples were sold and placed beyond the reach of the mortgagee.

The trial court was of the opinion that the *Cashmere Valley Bank* case, *supra,* was distinguishable from the instant case, principally because, in the cited case, the rights of the Pacific Fruit Company were those of a second lienor, while in the instant case Wade was a purchaser, and for the further reason that, in the cited case, the mortgages involved each provided that the mortgagor should do at his own expense what was done by the Pacific Fruit Company.

We are unable to agree that there is any difference in effect between what was done in the cited case by the Pacific Fruit Company and in the instant case by Wade, as purchaser, or that Wade, as purchaser, has

any greater rights than did the Pacific Fruit Company.

Rem. Rev. Stat., § 3780 [P. C. § 9747], provides:

"A mortgage of personal property is void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, and against *all subsequent purchasers*, pledgees, and mortgagees and encumbrancers for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and unless it is acknowledged and filed within ten days from the time of the execution thereof in the office of the county auditor of the county in which the mortgaged property is situated as provided by law."

It will be noticed that, as against a mortgage, properly executed and filed, a subsequent purchaser of the mortgaged property stands in the same position as subsequent creditors, whether they have or claim a lien upon such property, subsequent pledgees, mortgagees and encumbrancers.

In 2 Jones, Chattel Mortgages and Conditional Sales (Bowers ed.), 264, § 490, we find the following statement:

"A purchaser of property upon which there is a valid mortgage who consumes or sells the property or any part of it is liable to the mortgagee for the damages so occasioned him; and it makes no difference that the purchaser took the property in hostility to the mortgage, and denying that it was an existing lien.

"The measure of damages against one who has purchased mortgaged property and has sold it to a stranger, so as to be liable for a conversion, is the value of the property and interest thereon from the time of sale by the defendant and not from the time of his purchase."

Bowers, The Law of Conversion (1917), 102, § 128, states the rule as follows:

"One who buys mortgaged property and either sells it again or consumes it is liable to the mortgagee in

trover for its value with interest from the time he sold or consumed it."

We think the mortgage in the instant case, while perhaps not as specific as the mortgages in the *Cashmere Valley Bank* case, sufficiently required the mortgagor to do all things necessary to protect the crop, which, in our opinion, would certainly require a proper harvesting and packing of the crop.

We conclude, from the foregoing authorities, that the conversion in the instant case did not take place until respondent Wade sold the apples and placed them beyond the reach of appellant's mortgage.

Respondent Wade having taken the fruit with full knowledge of appellant's mortgage, we are of the opinion he was not entitled to deduct from the sale price the expenditures made by him upon the apples, which expenditures were all made prior to conversion. *Cashmere Valley Bank v. Pacific Fruit & Produce Co., supra.* As to the right of one who has enhanced the value of mortgaged property to recovery for such expenditures, see, also, *Rothweiler v. Winton Motor Car Co.,* 92 Wash. 215, 158 Pac. 737; *Levitch v. Link,* 95 Wash. 639, 164 Pac. 233; *Beecher v. Thompson,* 120 Wash. 520, 207 Pac. 1056, 29 A. L. R. 699; *First Nat. Bank v. White-Dulany Co.,* 121 Wash. 386, 209 Pac. 861.

We do not think the cases of *Chappell v. Puget Sound Reduction Co.,* 27 Wash. 63, 67 Pac. 391, 91 Am. St. 820; *Bailey v. Hayden,* 65 Wash. 57, 117 Pac. 720; and *Gunstone v. Chicago, M. & P. S. R. Co.,* 79 Wash. 629, 140 Pac. 907, 52 L. R. A. (N. S.) 392, are applicable herein, to sustain respondent's contention that appellant is not entitled to the value of the apples at the time they were sold by Wade.

We are therefore of the opinion the court erred in refusing to allow appellant to foreclose her crop mortgage, as asked for in her first cause of action, and

in refusing to direct that the $1,100 representing the fruit still in possession of Wade at the time of such foreclosure, be applied on appellant's judgment against Loudon and wife.

We are also of the opinion that the court erred in refusing to grant judgment to appellant on her third cause of action against respondent Wade, for any deficiency that remained after applying the $1,100 to appellant's judgment against the Loudons, and after applying the proceeds of the sale of the Ford car and Chevrolet truck, it being admitted that Wade still has in his possession $3,927.05, representing the value of the apples sold by him other than those represented by the $1,100 deposited in court.

We think the trial court correctly held in favor of respondent Wade on appellant's fourth cause of action. Under the provisions of the contract of purchase, Loudon, as vendee, agreed to annually deliver twenty per cent of the crop to the vendor, and the sale proceeds of such twenty per cent were to be applied on the purchase price. There was no reservation of title to such twenty per cent in the vendor, and we are therefore of the opinion that the vendor and vendee did not, under this contract, become tenants in common of the crop, but title to the crop was in the vendee until a division had been made; and it follows, we think, that appellant could not therefore maintain an action in conversion against respondent Wade, as purchaser of the crop, for the value of such twenty per cent.

We have held that the occupier of land is the owner of all crops harvested during the term of his occupancy, whether the occupant be a purchaser in possession, a tenant in possession, or a mere trespasser in possession, holding adversely. *Churchill v. Ackerman*, 22 Wash. 227, 60 Pac. 406; *Clarke v. Clyde*, 25 Wash. 661, 66 Pac. 46. In *Lynch v. Sprague Roller Mills*, 51 Wash. 535, 99

Pac. 578, we find the following quotation from 24 Cyc. 1469:

" 'The title to the crops raised by one man on another man's farm depends largely if not entirely upon the contract between the two men. If the contract amounts to a lease or demise of the land by the owner to the occupier, then clearly the crops belong to the occupier whether he pays rent in money, or in kind by a share of the crops. The occupier in such case becomes the owner *pro hac vice,* and has title to the products of the farm until division.' "

See, also, *Fuglede v. Wenatchee District Cooperative Ass'n,* 134 Wash. 350, 235 Pac. 790, 39 A. L. R. 953; *Pacific Fruit & Produce Co. v. Fruit Production Co.,* 184 Wash. 571, 52 P. (2d) 311.

Respondent cites *Fuhrman v. Interior Warehouse Co.,* 64 Wash. 159, 116 Pac. 666, 37 L. R. A. (N. S.) 89; *Nicholas v. Security State Bank,* 132 Wash. 239, 231 Pac. 805; and *Federal Land Bank v. McCloud,* 52 Idaho 694, 20 P. (2d) 201. The first two cases cited are landlord and tenant cases, where, under the lease, the landlord was to receive as rent a certain portion of the crop. We have held that, under such an agreement, the landlord and tenant became tenants in common in the crop. However, it is apparent that the rule as announced in the case of *Lynch v. Sprague Roller Mills, supra,* has not been changed or abrogated, as the rule therein announced was reaffirmed in *Pacific Fruit & Produce Co. v. Fruit Production Co., supra.* We think the cases cited by respondent are therefore not applicable here.

Neither do we think the case of *Federal Land Bank v. McCloud, supra,* applicable, for the reason that, in the cited case, the contract specifically reserved in the vendor the legal title to all the grain raised on the premises, until delivery to the vendor of his share of the crops. No such reservation is in the contract in the instant case.

We think the distinction between the right of a vendor under a contract such as the one in the instant case and the right of a landlord under a lease, where the rent is payable with a portion of the crop, is that, where the land is leased for a part of the crop to be raised upon it, the contract, when the lessor has placed the lessee in possession, has been executed by the former, and his right to his portion of the crop is due and will be payable when it is ready for delivery. In the meantime, he and the tenant hold the crop as co-owners, or co-tenants, while in the case of the sale of land upon contract containing an agreement that a portion of the crop to be raised thereon shall be delivered to the vendor to be sold, the proceeds to be applied toward the payment of the purchase price, and the amount of the payment to be determined and applied when the crops are disposed of, there being no reservation of title to the crops in the vendor, the contract does not vest in the vendor of the land title to the crops, or any portion thereof. Such a contract is wholly executory, and the vendor and purchaser of the land do not hold the crops as co-owners or co-tenants.

The judgment is reversed, with instructions to the trial court to enter judgment in accordance with this opinion. Appellant will recover costs herein.

BLAKE, C. J., BEALS, STEINERT, and GERAGHTY, JJ., concur.