[No. 1882-1.    Division One.    April 22, 1974.]

ROBERT W. O'BRIEN *et al.*, *Appellants*, v. FLOYD LARSON *et al.*, *Respondents*.

*Oberquell & Ahlf* and *Argal D. Oberquell,* for appellants.

*Reed, McClure, Moceri & Thonn, P.S.,* and *Roy J. Moceri, William R. Hickman,* and *A. A. Samboni,* for respondents.

FARRIS, J.—The O'Briens appeal from the trial court's dismissal of their suit for damages allegedly suffered when they were forced to pay $10,000 to the Larsons to obtain consent to the resale of a tavern which the O'Briens had originally bought from the Larsons.

The O'Briens agreed to buy and the Larsons agreed to sell a tavern located in Seattle, Washington, known as the Cabin Tavern for the agreed price of $72,500. The parties selected Edgar Rombauer, an attorney, as escrow agent and instructed him to prepare a security agreement on his standard form. Clause 7 of Rombauer's standard form (WBA UCC-1B) provided:

> Without the prior written consent of Secured Party, Debtor will not remove the property from the State of Washington, and Debtor will not sell nor lease the property or any interest therein.

The security agreement was signed in blank by the O'Briens. Some 14 months thereafter the O'Briens entered into an agreement to sell the tavern to a third party. The Larsons required a $10,000 cash payment on the principal still due from the original sale as a condition of consenting to the subsequent sale. After the subsequent sale was concluded, the O'Briens initiated this action against the Larsons and Rombauer for fraud, conspiracy to commit fraud, and unconscionability of the provision restricting resale. They demanded the return of the $10,000 and damages arising from its retention. The O'Briens also sued Rombauer for malpractice alleging that he had negligently or

deliberately failed to inform them of the consent to sale provision in the security agreement.

The trial court granted a motion dismissing the cause at the conclusion of the plaintiff's case for the reasons that

1) no damages were proved,

2) no breach of fiduciary duty was proved,

3) no fraud or conspiracy to commit fraud was proved, and

4) the provision requiring consent to a subsequent sale was not an unconscionable contract provision as applied to this transaction.

The O'Briens appeal.

■■ Error is assigned to the trial court's holding that the O'Briens failed to prove damages. The record shows that the O'Briens sold the tavern some 14 months after its purchase for a price substantially higher than they paid for it. The claim for damages is based solely on the $10,000 payment for consent to sell. Although the O'Briens alleged at trial that they were considering the purchase of another tavern and claimed as damages the lost profits from this venture, the evidence is too vague to present a question for the jury. We recognize that proof of damages may be by less substantial and specific evidence than is required to establish liability. *Larson v. Union Inv. & Loan Co.*, 168 Wash. 5, 10 P.2d 557 (1932).

> Once liability for damages is established, the precise amount need not be shown with mathematical certainty. Nevertheless, every plaintiff claiming damages has the burden of proof to present sufficient evidence from which damages can be determined on some rational basis and other than by pure speculation and conjecture.

*Olympia Oyster Co. v. Rayonier, Inc.*, 229 F. Supp. 855, 861 (W.D. Wash. 1964), citing *Gilmartin v. Stevens Inv. Co.*, 43 Wn.2d 289, 261 P.2d 73 (1953). But lost profits must be proved with reasonable certainty; damages which are remote and speculative cannot be recovered. *National School Studios, Inc. v. Superior School Photo Serv., Inc.*, 40 Wn.2d 263, 242 P.2d 756 (1952); *Bromley v. Heffernan Engine*

*Works,* 108 Wash. 31, 182 P. 929 (1919). Where a plaintiff is conducting a new business with costs unknown, prospective profits cannot be awarded. *Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 16, 390 P.2d 677 (1964). Here, there was no evidence that O'Brien had even entered into negotiations for the purchase of a new tavern and absolutely nothing by which to measure the prospective profit or loss which would result from the venture if undertaken.

In addition, the failure of O'Brien to charge the $10,000 payment to his purchaser or even to charge interest on the sum was not the fault of the Larsons or of Rombauer, the escrow agent.

Even if the failure to prove damages did not alone justify the dismissal, the record fails to reveal facts to support a cause of action based on conspiracy and fraud or conspiracy to commit a fraud upon the O'Briens.

■ Fraud requires nine elements. *Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 34 P.2d 428 (1934). Each must be proved by clear, cogent and convincing evidence. *Farrell v. Score,* 67 Wn.2d 957, 411 P.2d 146 (1966).

■ ■ A civil conspiracy is a combination of two or more persons agreeing to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means, or by concerted action to accomplish a lawful or unlawful purpose by unlawful means. *Harrington v. Richeson,* 40 Wn.2d 557, 245 P.2d 191 (1952). Evidence required to establish a conspiracy to commit fraud must be clear and convincing. *Bowyer v. Boss Tweed-Clipper Gold Mines, Inc.,* 195 Wash. 25, 79 P.2d 713 (1938). In general, on a challenge to the sufficiency of the evidence, all evidence must be taken in the light most favorable to the plaintiff, and he is entitled to all reasonable inferences. *Couie v. Local 1849, United Brotherhood of Carpenters & Joiners of America,* 51 Wn.2d 108, 316 P.2d 473 (1957). However, where a conspiracy is sought to be established by circumstantial evidence, this rule is limited.

While it is recognized that a conspiracy may be, and usually must be, proved by acts and circumstances suffi-

cient to warrant an inference that the defendants have reached an agreement to act together for the purpose alleged, the test of the sufficiency of the evidence is that the facts and circumstances relied upon to establish the conspiracy must be inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy.

*Baun v. Lumber & Sawmill Workers, Local 2740,* 46 Wn.2d 645, 656, 284 P.2d 275 (1955).

The O'Briens alleged no act by Larson or Rombauer which is inconsistent with a lawful or honest purpose. O'Brien argues that his own signing in blank of the security agreement and the insertion of a value for the fixtures and furniture which he claims is excessive establish at least an inference of conspiracy. These acts, however, are not in and of themselves inconsistent with a lawful or honest purpose.

The only allegation of a misrepresentation of fact is O'Brien's assertion that at the time of the execution of the real estate contract he asked Rombauer if there were any restrictions on resale and Rombauer answered no. The record reflects the following exchange:

Q  Did you read the real estate contract?
A  Very thoroughly.
Q  Did you ask any questions about it?
A  Yes.
Q  What did you ask?
A  I asked if there were any restrictions on the resale or any penalties for resale.
Q  You asked who?
A  Mr. Rombauer.
Q  What did he tell you?
A  He said there weren't any, but go ahead and read it.

This testimony is insufficient to take the question of either fraud or conspiracy to the jury, although it might be the basis for an allegation of breach of duty. Rombauer correctly notes that he was asked a question regarding the real estate contract, not the security agreement. But if, as O'Brien argues, Rombauer was acting as his attorney, there

is at least a question of fact as to whether Rombauer had a duty to disclose the restriction in the security agreement although no specific question was asked regarding it. *See Cameron v. Hurn,* 147 Wash. 434, 440, 266 P. 179 (1928).

The O'Briens rely on the parties' escrow instructions to Rombauer to establish their allegation that Rombauer was acting as their attorney.

> We understand that you are acting as attorney for all parties in this transaction, and that you may also on occasion or now represent the broker involved, and we have no objection thereto.

Exhibit No. 4. This language raises at least a question of fact as to whether Rombauer's function was more than escrow agent in the transaction. But even if Rombauer was acting as the attorney for the O'Briens (which is not established), and in doing so breached an affirmative duty to disclose the resale restriction in the security agreement, the O'Briens did not prove damages. The trial court did not err in refusing to submit the issue of Rombauer's negligence to the jury where the record affirmatively reflected no damages arising from such possible negligence.

The O'Briens also argue that the trial court erred in ruling that the Larsons had a right as chattel mortgagees to demand a payment on the principal for their consent to the O'Brien third-party resale and in refusing to rule that the contract so providing was unconscionable.

O'Brien relies on *Loudon v. Cooper,* 3 Wn.2d 229, 100 P.2d 42 (1940), for the proposition that where a secured party's interest is not in jeopardy, his debtor may transfer legal title to a third party, subject to the security interest, without the consent of the secured party. He cites the following language:

> We think the rule is well established in this state that title to the property covered by a chattel mortgage remains in the mortgagor, and that the mortgagee has only a lien thereon. . . . This being true, we think it must follow that the mortgagor had a right to transfer the legal title to the mortgaged property, subject, however,

to the mortgage, and that such a transfer alone did not give the mortgagee the right to bring an action in conversion, as long as the chattels were still in existence and could be subjected to the lien of the mortgage.

(Citation omitted.) *Loudon v. Cooper, supra* at 236.

A critical difference between *Loudon* and the present case lies in the present security agreement, clause 7:

Without the prior written consent of Secured Party, Debtor will not remove the property from the State of Washington, and Debtor will not sell nor lease the property or any interest therein.

In *Loudon,* the mortgage instrument contained no requirement that the vendee obtain the consent of the vendor before selling.

The only rationale which O'Brien advances for overriding the explicit contractual requirement of prior consent is that clause 7 of the security agreement is unconscionable under RCW 62A.2-302, which provides:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

No case is cited in support of this contention. There is nothing in the record to support the allegation that the provision was unconscionable.

■ Finally, error is assigned to the introduction of evidence of prior lawsuits in which O'Brien was a party. This allegation of error is of no consequence in the present posture of the case. Even if, as O'Brien argues, this evidence is highly prejudicial and of no probative value, the

trial court's refusal to submit the case to the jury removed the question of prejudice from consideration.

Affirmed.

JAMES and CALLOW, JJ., concur.