No. 3981.   Decided December 24, 1901.]

BURT E. CHAPPELL, *Appellant,* v. PUGET SOUND REDUCTION COMPANY, *Respondent.*

CONVERSION — STANDING TIMBER — QUESTION FOR JURY.

Where an action is brought for the conversion of standing timber, instead of the statutory action under Bal. Code, §§ 5656, 5657, providing for treble damages in case of wilful or malicious trespass, the question for the jury is not the *mala fides* of defendant, but whether the taking was wrongful.

SAME — MEASURE OF DAMAGES.

Where one continued to cut and appropriate standing timber for the period of a year after the expiration of a contract entitling him thereto, under the mistaken impression that he was the owner of the timber under his contract, he is an unintentional trespasser, and in an action against him for conversion

the measure of damages is the value of the timber standing, when the land has not been injured and the timber had no special value other than for cord wood.

SAME — INSTRUCTIONS.

In an action for the conversion of standing timber, where the only evidence on plaintiff's part of the actual amount taken was the testimony of the trespasser that he did not take to exceed 400 cords, it was not error for the court to instruct the jury that, if they found for plaintiff, they could not find for a greater amount than 400 cords.

Appeal from Superior Court, Snohomish County.—Hon. JOHN C. DENNEY, Judge.    Affirmed.

*Whitney & Headlee,* for appellant.

*F. H. Brownell* and *Cooley & Horan,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—This action was brought for the value of 1,000 cords of wood, alleged to have been wrongfully taken from plaintiff's land by one Thomas Diffley, and by Diffley shipped to Everett and sold to the defendant. Plaintiff claims the value of the wood at Everett, which is $2.32½ per cord, while defendant maintains, as the lower court held, that plaintiff was entitled to the value of the timber standing on the premises, which is ten cents per cord. The undisputed facts in the case are as follows: On June 24, 1897, Stephen Parr and wife were the owners and in possession of 160 acres of timber land in Snohomish county. On that date they sold, and, by a contract in writing, in consideration of $600, conveyed, all the timber upon the tract of land to a copartnership composed of L. H. Cyphers and Ulmer Stinson, under the name of Cyphers & Stinson. In this contract of sale it was agreed that the timber should be removed from the land within two years after the date of the contract. A right of way over the

said premises for logging roads, however, was granted for a term of five years. Four days after the date of this contract, on June 28, 1897, Parr and wife, in consideration of $100, sold the land to one Frank Campbell, an uncle of plaintiff, subject to the sale of timber and right of way above named. On the 13th day of October, 1897, Thomas Diffley purchased the timber upon the tract of land mentioned from Cyphers & Stinson for a consideration of $600, and the contract above mentioned was assigned to him. At the time Diffley purchased the timber from Cyphers & Stinson, he supposed Parr was still the owner of the land, and at that time went to see Parr, and told him he had purchased the timber, and that the time for removing the same would expire in something over a year, and thereupon Parr said to Diffley: "Tom, you can have all the time you want to. I'll never bother you." Diffley thereupon took possession of the premises, and continuously thereafter until this action was brought was in possession thereof, cutting and removing cord wood therefrom. On March 17, 1898, Frank Campbell sold the land to plaintiff in consideration of $200, subject to the sale of timber and right of way for logging roads above mentioned. At the time plaintiff purchased the land, Diffley was in possession of it, engaged in removing timber therefrom. Plaintiff knew this, and said nothing to Diffley, although he was upon the land as often as once a month from the time he purchased it. In April or May, 1900, plaintiff served a written notice on Diffley "to quit cutting wood there, and not take any more off." Diffley at this time told plaintiff that "he didn't think he would quit." In about ten days thereafter plaintiff went to Diffley again, and (using his language) said: "And I asked him if he was still going to keep on cutting, or whether he was going to quit, or whether he was going to pay any attention to the notice

that I gave him to stop, and he said that he was going to keep right on. He said that he had bought that timber, and he would like to see the man to stop him from cutting it off." About the middle of June, 1900, plaintiff notified defendant by telephone that the wood they were buying from Diffley belonged to the plaintiff, and not to pay Diffley any more money therefor. In August following, plaintiff brought this action to recover the value of all wood cut after the 24th day of June, 1899, which was alleged at 1,000 cords, at a value of $2,600. On the trial the jury found that 328 cords had been taken between June 24, 1899, and August 23, 1900, the time of the commencement of this action, and that the stumpage value thereof was $32.80. From a judgment for this amount, plaintiff appeals.

There is no contention in this case that there were any special damages to the land, or any wilful or malicious trespass. The complaint alleges a wrongful entry upon the premises, and the conversion of 1,000 cords of wood, of the value of $2,600. The undisputed facts do not show any wilful or malicious trespass. It is true, the time expressed in the contract for removing the timber expired on June 24, 1899, and that in April or May of 1900, Diffley was notified by plaintiff not to remove any more timber; but these facts do not make Diffley a wilful or malicious trespasser in taking the timber, because he had purchased it, and supposed in good faith that he was still the owner of it. If the action had been brought under the statute which provides for treble damages in case of wilful or malicious trespass, the *bona fides* of Diffley would have been a question for the jury, under §§ 5656 and 5657, Bal. Code. But since the action is one merely for damages in taking and converting the wood alleged in the complaint, the question of *mala fides* is not for the jury. It

was only for the jury to determine in this case whether the taking was wrongful, and, if so, to determine single damages at the time and place of conversion. *McLeod v. Ellis*, 2 Wash. 117 (26 Pac. 76.)

The great weight of authority in the United States in regard to the measure of damages in cases of this character is as expressed in *Wooden-ware Co. v. United States*, 106 U. S. 432 (1 Sup. Ct. 398), where it is held that where the defendant was an unintentional or mistaken trespasser, or his innocent vendee, the measure of damages is the value at the time of conversion, less what the labor and expenses of his vendor have added to its value. In *Ayres v. Hubbard*, 57 Mich. 322 (23 N. W. 829, 58 Am. Rep. 361), the court in a case similar to the one at bar, says:

"The general rule of damages is the value of the property lost under such circumstances at the time and place of conversion," and "Complete indemnity for the actual loss sustained in this case by the plaintiff is what he was entitled to recover."

In *Cushing v. Longfellow*, 26 Me. 306, it was held that the plaintiffs have no right to select any other place than that where the injury was originally done, to enhance the value of the article taken. The value of the property severed from the freehold is that which it has immediately after being severed. In *Carroll v. More*, 30 Wis. 574, it was held that where no circumstances of fraud, malice, or wanton injury are done by the trespass, the value of the logs cut, or, as it is sometimes called, the value of the stumpage, would seem to be the measure of just compensation. This rule in Wisconsin has since been modified by statute. In *Coxe v. England*, 65 Pa. St. 212, the court said:

"This was an action of trespass for cutting standing timber. Its value was therefore to be ascertained by the

price of such timber in the vicinity, and not by the net value of the logs cut from it, in a distant market. The evidence shows that the timber had a price where it stood, the value of stumpage, as it is termed, being proved by numerous witnesses."

To the same effect see *Tilden v. Johnson,* 52 Vt. 628 (36 Am. Rep. 769); *Ward v. Carson River Wood Co.,* 13 Nev. 44; *Gardere v. Blanton,* 35 La. An. 811; *Railway Co. v. Hutchins,* 32 Ohio St. 571 (30 Am. Rep. 629); *Railway Co. v. Hutchins,* 37 Ohio St. 296; *White v. Yawkey,* 108 Ala. 270 (19 South. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159); *Bailey v. Chicago, etc., Ry. Co.,* 19 L. R. A. 653, and note (3 S. Dak. 531, 54 N. W. 596).

In the case of *Beede v. Lamprey,* 64 N. H. 510 (15 Atl. 133, 10 Am. St. Rep. 426), the court, after reviewing very many cases, says:

"The weight of authority, however, in this country is in favor of the rule which gives compensation for the loss, that is, the value of the property at the time and place of conversion with interest after, allowing nothing for value subsequently added by the defendant, when the conversion does not proceed from wilful trespass, but from the wrongdoer's mistake or from his honest belief of ownership in the property, and there are no circumstances showing a special and peculiar value to the owner, or a contemplated special use of the property by him."

In the case of *King v. Merriman,* 38 Minn. 47 (35 N. W. 570), which is very much the same as the case under consideration, the court lays down the rule for the measure of damages substantially as follows: "Where defendant is an unintentional or mistaken trespasser, or where he honestly and reasonably believed that his conduct was rightful, the value of the property at the time it was taken, that is, the value of the timber standing." See, also, Sedgwick, Damages (8th ed.), §§ 933, 934, 503; 3 Sutherland, Damages (2d ed.), §§ 1019 and 1020.

This rule, it seems to us, is particularly applicable to the case in hand.    In this case the land has not been injured. There is no claim that the timber had any special value for any other purpose than cord wood.· It appears by some of the witnesses that the timber fit for shingles and lumber had been removed, and what was left was "poor stuff," and that its removal would benefit the land.    Diffley had purchased the timber; had been permitted for a year after the time specified in his agreement to continue to remove the timber with full knowledge of the owner of the land.    He supposed he owned the timber.    He certainly had a right to suppose he owned it, under the circumstances.    Standing timber fit for cord wood in that vicinity was, and had been, selling at ten cents per cord.    When it was manufactured into cord wood and shipped by wagon and rail to Everett, it was worth $2.32½ per cord; that is to say, the labor of one who had paid for the timber standing, and who supposed he owned it, had made the value more than twenty times its value standing.    By what rule of right can it be held that one who stands by and sees his property thus enhanced in value by the labor of another shall reap all the benefit of this added labor, and contribute nothing himself except his negligence? If there was any question between plaintiff and Diffley as to who was the owner of the timber, it seems that the plaintiff should have taken some steps to have determined that question, and in default thereof he must be relegated to his right of recovery for actual damages.    A premium so great as the one sought here ought not to await plaintiff as the reward for his negligence in not taking some active steps to determine that question, and then the burden of paying it be visited, probably, upon an innocent purchaser, who has already paid the market price for the wood.

In the trial of the cause in chief plaintiff called Thom-

as Diffley as a witness to prove his case. Diffley testified that after June 24, 1899, he did not take to exceed 400 cords of wood from the premises. There was no other evidence of the actual amount taken. The court, upon this evidence, instructed the jury that, if they found in favor of the plaintiff, they could not find for a greater amount than 400 cords. The plaintiff was bound by his own evidence in this respect, and it was not error for the court to so instruct the jury.

Finding no error in the record, the cause will be affirmed.

REAVIS, C. J., and DUNBAR, FULLERTON, HADLEY, WHITE and ANDERS, JJ., concur.