964 P.2d 1173 (1998)
136 Wash.2d 567
Certification from the United States District Court for the Western District of Washington in
KITSAP COUNTY, a political subdivision of the State of Washington, Plaintiff,
v.
ALLSTATE INSURANCE COMPANY, a foreign insurance company; Colonial Penn Insurance Company, a foreign insurance company; Columbia Casualty Company, a foreign insurance company; Covenant Mutual Insurance Company, a foreign insurance company; Fidelity and Guaranty Insurance Underwriters, Inc., a foreign insurance company; First State Insurance Company, a foreign insurance company; Harbor Insurance Company, a foreign insurance company; Home Indemnity Company, a foreign insurance company; Interstate Fire and Casualty Company, a foreign insurance company; Underwriters At Lloyds, a foreign insurance company; National Union Fire Insurance Company of Pittsburgh, Pennsylvania, a foreign insurance company; Protective National Insurance Company of Omaha, a foreign insurance company; Stonewall Insurance Company, a foreign insurance company; Transamerica Insurance Company, a foreign insurance company; Transcontinental Insurance Company, a foreign insurance company; United Pacific Insurance Company, a domestic insurance company; Century Indemnity Company, a foreign insurance company; and Fidelity and Guaranty Insurance Underwriters, Inc., Defendants.
No. 65601-I.
Supreme Court of Washington, En Banc.
Argued February 24, 1998.
Decided October 1, 1998.
*1175 Mary DeYoung, Thorsrud, Cane & Paulich, Patrick Paulich, Lawrence Gottlieb, Karr, Tuttle & Campbell, Jacquelyn Beatty, Steven Robinson, Seattle, Diane L. Polscer, Portland, OR, Timothy Tompkins, James Mitchell, Seattle, Rivkin, Radler, Hart & Kremer, Anthony Gambardella, Daniel Bartoldus, Jay Kenigsberg, Michael Buckley, Uniondale, NY, Laurie Kohli, Peery, Hiscock, & Pierson, James Horne, Michael Bond, Thomas James, Seattle, Robinson & Cole, Stephen Abarbanel, Boston, MA, Kent Fandel, Stephen Goodman, Jr., Arthur Lachman, Murray, Dunham & Murray, Michael Taylor, Seattle, Walter Andrews, Laura Foggan, John Yang, Washington, DC, David Walker, Chicago, IL, Carl Forsberg, Cozen & O'Connor, Thomas Jones, Curt Feig, Merrick, Hofsted & Lindsey, Tyna Ek, Sheryl Cottrell, Seattle, Thomas Going, Michael Gallagher, Philadelphia, PA, Christine Dinsdale, Leo Clarke, Seven Edmiston, Seattle, for defendants.
Robert J. Stephenson, Donald B. Scaramastra, Garvey Schubert & Barer, Ronald A. Franz, Law Offices of Ronald A. Franz, Seattle, for Plaintiffs.
*1174 ALEXANDER, Justice.
The United States District Court for the Western District of Washington has certified the following question to us: "Whether the claims against Kitsap County constitute `personal injury' under each of the subject liability insurance policies." Doc. 603 at App. A. For reasons that we set forth hereafter, we answer yes to the question insofar as it relates to policies that provide coverage for a personal injury arising from a "wrongful entry" and/or "other invasion of the right of private occupancy" and answer no as it relates to policies that provide coverage only for a personal injury arising from a "wrongful eviction."

I. Facts
In order to put the certified question in context, it is necessary to set forth some of the facts that have led to the litigation in federal court. These facts we have gleaned from the record furnished to us by the federal court and from the briefs of the parties.

A. The Lawsuits
In 1993, three lawsuits were brought against Kitsap County and other defendants. Two of the suits were maintained by past or current residents of the Norseland Mobile Home Park. The former and current park residents alleged in their suit that their health and property had been impaired by contaminants and foul odors emanating from a waste disposal site formerly owned by Kitsap County, on which a portion of the Norseland Mobile Home Park was located, and from a nearby privately-owned landfill in which the County had disposed of municipal hazardous waste. The other suit was brought by Sunshine Properties, Inc., the owner of the Norseland Mobile Home Park, and other plaintiffs who possessed an interest in some commercial buildings that were located near the waste disposal sites. These plaintiffs sought damages for environmental problems which they alleged were caused by Kitsap County and other defendants. The plaintiffs in all three suits set forth causes of *1176 action against the County for trespass and nuisance among other theories of recovery. The past and current mobile home park residents included an additional cause of action for interference with their use and enjoyment of their property. The three lawsuits were ultimately consolidated before the United States District Court for the Western District of Washington.[1] Kitsap County tendered defense of the lawsuits to 19 insurance companies that had, over a 30-year period, issued a total of 23 liability policies to the County. Because the insurance companies agreed to defend the suits only under a reservation of rights, Kitsap County elected to defend itself. It eventually entered into a comprehensive settlement agreement with all of the plaintiffs and then sought indemnification from the insurers for the sums it paid to the plaintiffs in order to obtain the settlement.
The insurance companies declined to indemnify Kitsap County and, consequently, the County commenced its own suit against all 19 companies in the United States District Court for the Western District of Washington. Kitsap County contended that the insurers were obligated to provide indemnification by virtue of their agreement to provide coverage for sums the County had to pay as damages for personal injury. The County then moved for summary judgment seeking a declaration from the district court that the claims the plaintiffs had maintained against it for nuisance, trespass, and interference with use and enjoyment of the property were claims for personal injury within the meaning of the policies issued to it by the various insurers. In response, the United States District Court certified to us the question that we have set forth above.

B. The Policies
All of the policies in question provide coverage for sums the insured, Kitsap County, became obligated to pay because of "personal injury." Some of the policies provide for "personal injury" liability in an endorsement, while others include it in the general coverage of the policy. In 17 of the policies, "personal injury" is defined to include "bodily injury." All of the policies include in the definition of "personal injury" injuries arising out of certain specified offenses. In 11 policies, coverage is provided for personal injury arising from the offenses of "wrongful entry or eviction or other invasion of the right of private occupancy." A provision typical of those policies is as follows:
The Company will pay on behalf of the Insured ... all sums which the Insured shall become legally obliged to pay as damages because of:
APersonal injury ...
... caused by an occurrence during the policy period....
....
... `Personal Injury' means bodily injury or if arising out of bodily injury, mental anguish. It also includes injury arising out of one or more of the following offenses committed in the conduct of the Named Insured's business.
Group Afalse arrest, detention or imprisonment, or malicious prosecution;
Group Bthe publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the Named Insured;

Group Cwrongful entry or eviction, or other invasion of the right of private occupancy.[[2]]
(emphasis added). In six of the policies coverage is provided only for a "personal injury" arising out of a "wrongful entry" or "wrongful *1177 eviction."[3] In six other policies, coverage is limited to a personal injury arising from the offense of "wrongful eviction."[4] One insurance policy provides that a personal injury arising out of "violation of property rights" is within the coverage of the policy in addition to coverage for personal injury arising from "wrongful entry or eviction, or other invasion of the right of private occupancy."[5]
All of the general liability insurance policies that are at issue here also afford coverage to Kitsap County for such sums as it "shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence."[6] In general, the policies defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Br. of Certain Insurers at 7.
According to the briefs of the parties, some of the policies include a pollution exclusion applicable to the property damage and bodily injury provisions.[7] According to the insurers, the following language is typical of such pollution exclusion language:
this insurance does not cover:
bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.[[8]]
The record also reveals that in some policies, the pollution exclusion applied with respect to personal injury coverage.

II. General Principles
In Washington, "[c]onstruction of an insurance policy is a question of law for the courts, the policy is construed as a whole, and the policy `"should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."'" Queen City Farms, Inc. v. Central Nat'l Ins. Co., 126 Wash.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994) (quoting Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 95, 776 P.2d 123 (1989) quoting Sears v. Grange Ins. Ass'n, 111 Wash.2d 636, 638, 762 P.2d 1141 (1988)). A policy is considered as a whole so that the court can give effect to every clause in the policy. American Star Ins. Co. v. Grice, 121 Wash.2d 869, 877, 854 P.2d 622 (1993), supplemented by, 123 Wash.2d 131, 865 P.2d 507, 44 A.L.R.5th 905 (1994). The aforementioned rule of construction is applied to endorsements as well as to the main policy. See, e.g., Transcontinental Ins. Co. v. Washington Pub. Utils. Dist. Util. Sys., Ill Wash.2d 452, 462, 760 P.2d 337 (1988).
*1178 The court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage. Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 876, 784 P.2d 507, 87 A.L.R.4th 405 (1990). If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition. Undefined terms, however, must be given their "plain, ordinary, and popular" meaning. Boeing, 113 Wash.2d at 877, 784 P.2d 507 (citations omitted). To determine the ordinary meaning of undefined terms, courts may look to standard English dictionaries. If words have both a legal, technical meaning and a plain, ordinary meaning, the ordinary meaning will prevail unless it is clear that both parties intended the legal, technical meaning to apply. Boeing, 113 Wash.2d at 882, 784 P.2d 507.
If policy language is clear and unambiguous, a court may not modify the insurance contract or create an ambiguity. American Star, 121 Wash.2d at 874, 854 P.2d 622. An ambiguity in an insurance policy is present if the language used is fairly susceptible to two different reasonable interpretations. American Star, 121 Wash.2d at 874, 854 P.2d 622. If there is an ambiguity, extrinsic evidence, if any, of the parties' intent may normally be considered. Fraternal Order of Eagles, Aerie No. 6-9 v. General Accident Ins. Co., 58 Wash.App. 243, 245, 792 P.2d 178, review denied, 115 Wash.2d 1018, 802 P.2d 127 (1990); Greer v. Northwestern Nat'l Ins. Co., 109 Wash.2d 191, 200, 743 P.2d 1244 (1987). If a policy remains ambiguous even after resort to extrinsic evidence, then the ambiguity is construed against the insurer. American Star, 121 Wash.2d at 874-75, 854 P.2d 622.

III. Analysis of Certified Question
As we have noted at the outset of this opinion, the question we have been asked to answer is as follows: "Whether the claims against Kitsap County [for trespass, nuisance, and interference with use and enjoyment of property] constitute `personal injury' under each of the subject liability insurance policies." Doc. 603 at App. A. In providing an answer to the question we recognize that when a federal court certifies a question to this court, this court answers only the discrete question that is certified and lacks jurisdiction to go beyond the question presented. Louisiana-Pacific Corp. v. Asarco Inc., 131 Wash.2d 587, 604, 934 P.2d 685 (1997).
Kitsap County contends that we should answer this question in the affirmative. The insurers assert, on the other hand, that the claims the plaintiffs made against Kitsap County in the three suits that resulted in settlement do not fall within personal injury coverage of the various policies. The County and the insurers[9] make numerous arguments in support of their respective positions and we discuss these arguments hereafter.

A. Case Law
Although the County and the insurers agree that this court has not addressed the precise issue presented by the certified question, the insurers assert generally that courts applying Washington law are "in accord with the overwhelming majority of courts nationwide" in rejecting efforts by policyholders to obtain personal injury coverage for damage to health and property from pollution. Br. of Certain Insurers at 20. The insurers, however, cite only one appellate court decision, Morton Int'l, Inc. v. Aetna Cas. & Sur. Co., 106 Ohio App.3d 653, 666 N.E.2d 1163 (1995), in which Washington law was controlling.[10] As the County points out, however, the court in Morton simply adopted the reasoning of the New York Court of Appeals in County of Columbia v. *1179 Continental Ins. Co., 83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (1994), without substantial analysis.[11] Furthermore, even though County of Columbia stands for the proposition that the personal injury provisions in the policy under review there only provided coverage for intentional acts, its principal holding was that where the pollution exclusion bars coverage for property damage, coverage is not available for the property damage even if it arose from personal injury claims. That issue, as we discuss later, is not squarely presented by the certified question and, thus, we do not address it.
The other cases from around the nation that are cited by the insurers may be divided into two categories. The first category of cases are those which, according to the insurers, pronounce that "applying personal injury coverage to environmental contamination claims simply cannot be squared with the overall structure of the policy." Br. of Certain Insurers at 20. Insurers cite only three cases to support this argument, two of which are published decisions of federal trial courts. Whiteville Oil Co. v. Federated Mut. Ins. Co., 889 F.Supp. 241 (E.D.N.C.1995), aff'd, 87 F.3d 1310 (4th Cir.1996); Kruger Commodities, Inc. v. United States Fidelity & Guar., 923 F.Supp. 1474 (M.D.Ala.1996). These opinions as well as the one appellate decision they cite, Gregory v. Tennessee Gas Pipeline Co., 948 F.2d 203 (5th Cir.1991), are not particularly helpful because the personal injury coverage there was much more limited than the coverage provided here. In Gregory, for instance, the policy before that court only covered a personal injury arising from a "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies." Gregory, 948 F.2d at 206. Similarly, in Whiteville and Kruger, the coverage provided by the policies before those trial courts was for injury arising from "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor." Whiteville, 889 F.Supp. at 245; Kruger, 923 F.Supp. at 1480.[12]
The other category of cases cited by insurers are cases that hold that coverage for trespass, nuisance or other personal injury claims that result in property damage are barred by an absolute pollution exclusion. See J. Josephson, Inc. v. Crum & Forster Ins. Co., 293 N.J.Super. 170, 679 A.2d 1206 (1996). Although we do not necessarily disagree with that view, as we have already noted above, that issue is not before us.

B. Does Coverage Hinge on Form of Action or on the Character of the Claims?
The insurers contend that even if personal injury damages arising from the torts of trespass, nuisance, and interference fall within the personal injury coverage of the policies provided to Kitsap County, coverage is precluded under the personal injury provisions of the policies because the essential character of the plaintiffs' claims against the County, recovery for damages to health and property caused by exposure to pollutants, governs coverage. To allow characterization of the claim in the complaint to govern coverage, the insurers argue, is to "elevate the form of the underlying pleadings over their substance." Br. of Certain Insurers at 30.
Kitsap County counters this argument by citing cases from other jurisdictions which stand for the proposition that in determining whether coverage is afforded by the personal injury provisions of a policy, one must look to the type of offense that the insured is alleged to have committed and not the nature of the damages sought in the action. Martin Marietta Corp. v. Insurance Co., 40 Cal.App.4th *1180 1113, 47 Cal.Rptr.2d 670, 676, 677 (1995), review denied (1996); see generally 7A JOHN ALAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4501.14 (Walter F. Berdal ed., 1979). The County calls particular attention to Great Northern Nekoosa Corp. v. Aetna Cas. & Sur. Co., 921 F.Supp. 401, 416 (N.D.Miss.1996), in which the court said, "Personal injury liability is a theory-based insurance coverage. It defines its coverage in terms of offenses, or theories of liability, not in terms of the injury sustained by the plaintiff." In contrast, the County contends, one must look to the nature of the injury or damage sustained by the claimant who is suing the insured in order to determine if coverage is available under the "bodily injury" and "property damage" provisions of a policy. Great Northern, 921 F.Supp. at 416.
While there is apparently no published decision from a court in this state which addresses whether personal injury coverage is dependent on the theory underlying the claim or the nature of the injury that is alleged, we are inclined to agree with the courts in other jurisdictions that in determining whether personal injury coverage exists we must look to the type of offense that is alleged. Here, all of the parties who sued Kitsap County claimed that their damages arose from actions of the County which constituted a trespass and/or nuisance. Some claimed, in addition, that the County interfered with their use and enjoyment of their property. If those claims are analogous to claims for the offenses of wrongful entry, wrongful eviction, or other invasion of the right of private occupancy then there is coverage under the personal injury provisions of the policies in question unless coverage is excluded by other provisions in the policy. A determination of whether the County committed any of the offenses would, of course, ultimately determine the obligation of any insurer to pay. That would be a factual determination for the federal court and is not an issue before us.

C. May the County Seek Overlapping Coverage?
The insurers also contend that if the County is permitted to obtain coverage for pollution-related damage under the personal injury provisions in the various policies issued to it, while at the same time it asserts that it is covered under the property damage or bodily injury provision of the policy, it will improperly result in the County receiving coverage under two different parts of the policy for the same allegations. Br. of Certain Insurers at 15-16. Such a construction of the policy language, they argue, would be inconsistent with the general principle that the court is to give independent effect to each provision in the policy. Although the insurers cite Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 405 A.2d 788 (1979), in support of this argument, the portion of the Weedo opinion that they refer to in their brief is not on point. Br. of Certain Insurers at 16 n. 6. The Weedo court was merely discussing the general rule of construction that courts employ when they are faced with ambiguities in an insurance contract. It merely said that "no amount of semantical ingenuity can be brought to bear on a fire insurance policy so as to afford coverage for an intersection collision." Weedo, 405 A.2d at 795. While we agree that an average purchaser of insurance, such as the hypothetical purchase in the Weedo court's example, may not reasonably expect coverage that is distinct from that to which the policy applies, it cannot be said that such a purchaser would be confused by the boundaries of the coverage provided here simply because there is overlapping coverage.
There is, in short, no rule of law that we are aware of that prevents an insurance company from providing overlapping coverage in any policy that it issues. By the same token, we know of no authority for the proposition that an insured must elect which coverage it chooses if it has been furnished with overlapping coverage in a policy. Any insurer that is a party to this suit provided the coverage that can be ascertained from a plain reading of its entire policy or policies. If the claims against Kitsap County constitute "personal injury" as that term is defined in any policy, then coverage is available under that policy, notwithstanding the fact that additional coverage may be provided to the insured by other provisions in the policy.

*1181 D. Is Personal Injury Coverage Limited to Intentional Acts of the Insureds?
The insurers contend, additionally, that the personal injury coverage provided in the policies in question covers a type f conduct that is "far removed from that alleged here." Br. of Certain Insurers at 17. Specifically, they assert that because each offense that is listed in the three groups of offenses set forth in the personal injury coverage provisions "involves an intentional but intangible injury of a personal nature (e.g., damage to reputation from defamation, deprivation of the liberty interest from false imprisonment, etc.)," it cannot include an action to recover for environmental pollution even if the claim falls within a claim for trespass, nuisance, or interference. Br. of Certain Insurers at 17. Even if we assume, as the insurers aver, that the gravamen of the claims that were made against the County were for bodily injury or property damage caused by an occurrence, the hallmark of which is "an accident ... an `unusual, unexpected, and unforeseen happening,'" the argument fails. Br. of Certain Insurers at 17 (citation omitted). That is so because, as we explain hereafter, the insurers' assertion that the offenses listed in the personal injury coverage involve intentionally inflicted injury does not hold up.
The insurers' first argument in support of that proposition is that because the term "offenses" is used in the personal coverage provisions, it is axiomatic that only intentional acts are covered. The insurers are incorrect. Although the term "offenses" is apparently not defined in any of the policies, one dictionary definition of "offense" is an "act of breaking the law; sin; crime; transgression." Reply Br. of PI. at 23 (quoting WEBSTER'S DELUXE UNABRIDGED DICTIONARY 1242 (2d ed.1979)). In Webster's Third New International Dictionary 1566 (3d ed.1986), that word is similarly defined as a "sin, transgression, misdeed," and an "infraction of law." As Kitsap County correctly observes, there are many laws that one may violate without intending to do so. In our judgment, the meaning that the insurers would subscribe to the term "offenses" is not one that would occur to an average purchaser of insurance.
The insurers' other argument is that because all of the enumerated offenses in groups A, B, and C of the personal injury coverage are intentional torts, it follows that only intentional torts are covered. This argument also fails because all of the enumerated offenses are not intentional torts. We have held, for example, that a private figure need only show negligence on the part of a defendant in order to maintain a defamation action. LaMon v. Butler, 112 Wash.2d 193, 770 P.2d 1027 (1989).
In reaching the conclusion that the personal injury provisions are not limited to intentional acts, we are not unmindful that the New York Court of Appeals reached a different conclusion in County of Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 634 N.E.2d 946, 612 N.Y.S.2d 345 (1994). In that case the court held:
that the coverage under the personal injury endorsement provision in question was intended to reach only purposeful acts undertaken by the insured or its agents. Evidence that only purposeful acts were to fall within the purview of the personal injury endorsement is provided, in part, by examining the types of torts enumerated in the endorsement in addition to wrongful entry, eviction and invasion: false arrest, detention, imprisonment, malicious prosecution, defamation and invasion of privacy by publication. Read in the context of these other enumerated torts, the provision here could not have been intended to cover the kind of indirect and incremental harm that results to property interests from pollution.
County of Columbia, 612 N.Y.S.2d 345, 634 N.E.2d at 950. Despite our respect for that court, we find ourselves more attracted to the view of the dissenting judge at the Appellate Division of the New York Supreme Court who indicated that he could not subscribe to the narrow construction given to the terms "wrongful entry" and "other invasion of the right of private occupancy," and, thus, concluded that a claim of continuing trespass falls within the offenses contained in the personal injury portions of the policies there in question. County of Columbia v. Continental Ins. Co., 189 A.D.2d 391, 396, *1182 595 N.Y.S.2d 988 (1993) (Crews, J., dissenting).

E. Reading the Pollution Exclusion Out of the Policy
As noted above, in some of the insurance policies furnished to Kitsap County there is an exclusion from the bodily injury and property damage coverage for pollution-related damages. The insurers assert that if the personal injury coverage provisions are construed to cover the trespass and nuisance claims that were made against the County, then the pollution exclusion applicable to the property damage and bodily injury coverage will be read out f the policy. They suggest that if this is countenanced an insured could avoid "limitations to coverage through the simple artifice of recharacterizing pollution liability claims as actions for `personal injury,'" thereby trumping other limitations to coverage. Br. of Certain Insurers at 23. They cite several cases from other jurisdictions, most notably Titan Corp. v. Aetna Cas. & Sur. Co., 22 Cal.App. 4th 457, 27 Cal.Rptr.2d 476 (1994), which stands for this proposition.
The County, on the other hand, asserts that a flaw in the insurers argument is that it proceeds on the incorrect assumption that every claim that arises from the release of pollutants will be or can be characterized as a trespass, nuisance, or interference with use and enjoyment of personal property. As the County observes, the pollution exclusion applicable to the property damage and bodily injury provisions would not be read out of the policy because it would have viability in cases where the claims against the insured could not be characterized as trespass, nuisance, or other claims for personal injury.
Despite the efforts of the insurers to have us determine this question, we decline to do so. As we indicated above, we are only to answer the precise question addressed to us by the federal court. That court has not asked us to answer this question and we are loathe to do so, in any case, without a more complete record than we have been furnished. We observe only that all of the insurers whose policies are under scrutiny here chose to provide coverage for sums the insured became legally obligated to pay as damages because of personal injury. It was also the decision of at least some of those insurers to provide a pollution exclusion that by its express terms applies only to claims for bodily injury and property damage, and not to claims for personal injury. The fact that some insurers provided a pollution exclusion applicable to personal injury coverage furnishes a strong argument for the point that this issue could easily have been removed from the case by all of the insurers had they chosen to do so. Furthermore, the insurers' argument that the exclusions for pollution-related claims will be read out of the policy if the trespass, nuisance, and interference with use and enjoyment of property claims fall within the personal injury coverage of the policies, could be viewed as an undertaking by the insurers to read the personal injury provision out of the policies. Such a reading of the policy, arguably, is unfair and unreasonable. On the other hand, as we have already noted, some courts have taken the position that in the presence of a pollution exclusion clause, personal injury coverage is not available for damages caused by pollutants even if the complainant's allegations fall within personal injury coverage. The relative merits of those two positions will have to be decided in federal court.

F. Is Personal Injury Coverage Limited to Enumerated Offenses?
The insurers contend that because the plaintiffs in the suits maintained against the County did not allege that the County committed any of the precise offenses that are enumerated in the personal injury coverage provisions, there is no coverage. More to the point, they note that the various plaintiffs claimed trespass, nuisance, and interference but did not claim that the County committed the offenses of wrongful entry or eviction or other invasion of the right of privacy. Thus, they argue that "[b]ased on this simple comparison between the underlying complaints and the terms of the personal injury provisions, no coverage exists under this part of the policies." Br. of Certain Insurers at 29.
The insurers cite E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 *1183 Wash.2d 901, 726 P.2d 439 (1986) and Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc., 81 Wash.2d 740, 504 P.2d 1139 (1973), as support for this argument. In our view, these cases do not lend support to the argument. This court simply concluded in those two cases that it would not impose on an insurer the responsibility of providing coverage for a liability that was not set forth in the policy. We do not withdraw from that position to any degree. Those cases simply do not answer the primary question before uswhether the claims against the County for trespass, nuisance, and interference are equivalent to claims for wrongful entry or eviction or other invasion of the right of private occupancy. If they are, then they are claims for personal injury. Therefore, we devote our attention to that question in the remainder of this opinion.

G. Is a Trespass Claim a Wrongful Entry or Other Invasion of the Right of Private Occupancy?

A. Wrongful Entry
The County contends that an average insured would think that a trespass was a wrongful entry. Unfortunately, neither trespass nor wrongful entry is defined in any of the insurance policies before us. Consequently, we turn to the dictionary to determine the plain, ordinary, and popular meanings of the terms. Although the term "wrongful entry" is not defined in Black's Law Dictionary as a single term, "wrongful" is defined there as "[i]njurious, heedless, unjust, reckless, unfair; it implies the infringement of some right, and may result from disobedience to lawful authority." BLACK'S LAW DICTIONARY 1612 (6th ed.1990). According to Black's Law Dictionary, the term "entry," insofar as real property law is concerned, is the "act of going peaceably upon a piece of land." BLACK'S LAW DICTIONARY 628 (4th ed.1951). As the County observes, the combination of the words "wrongful" and "entry," as defined, makes a phrase that is essentially synonymous with the word "trespass," which Black's Law Dictionary defines as "[a]n unlawful interference with one's ... property, or rights ... Any unauthorized intrusion or invasion of private premises or land of another." BLACK'S at 1502 (1990).
The insurers do not offer us any definitions that contradict those submitted by the County, but rather dismiss the effort to ascertain the meaning of these words from the dictionary as merely a "semantic attempt at manufacturing `personal injury' coverage by the use of strained dictionary definitions in an effort to fit the underlying allegations into the enumerated personal injury offenses." Br. of Certain Insurers at 31. The crux of the insurers' argument is that Washington recognizes a separate tort of "wrongful entry" which, it submits, is discrete, narrowly defined, and distinct from trespass. This tort, the insurers assert, is limited to physical invasions of another's property for the purpose of taking or withholding possession of the property, and is limited to landlord-tenant situations. The insurers distinguish wrongful entry from a trespass, suggesting that a trespasser need not have a possessory interest in the property, or any intent to dispossess. Therefore, according to the insurers, wrongful entry and trespass are separate torts that cannot be equated with each other.
We are satisfied that a tort of "wrongful entry" has never been acknowledged in Washington. Although this court has, particularly in some early cases, characterized a person's entry onto another's property as a wrongful entry, no case has been cited to us which definitively recognizes a separate tort of wrongful entry. Significantly, there are many older cases where this court has used the term "wrongful entry" in describing a simple trespass. Shamek v. Metropolitan Bldg. Co., 127 Wash. 336, 220 P. 816 (1923) (trespass action where entry described as wrongful); Golden Eagle Mining Co. v. Imperator-Quilp Co., 93 Wash. 692, 693, 161 P. 848 (1916) (The owner of a mining claim sued the owner of adjacent mining claim alleging that he "wrongfully entered" his claim. The claim was characterized by the court as a trespass upon real property.); Keil v. Grays Harbor & Puget Sound Ry. Co., 71 Wash. 163, 167, 127 P. 1113 (1912) (court indicated that an owner has common law remedies of redress for *1184 trespasser who made entry that is wrongful or "may enjoin the trespass"); Northern Pac. Ry. Co. v. Myers-Parr Mill Co., 54 Wash. 447, 451, 103 P. 453 (1909) (Trespass to timber case where court indicated that sufficient facts plead that defendant "wrongfully... entered.").
The three principal cases that the insurers rely on as support for the existence of the tort of wrongful entry are Priestley Mining & Milling Co. v. Lenox Mining & Dev. Co., 41 Wash.2d 101, 247 P.2d 688 (1952), Davis v. Dennis, 43 Wash. 54, 85 P. 1079 (1906), and Chappell v. Puget Sound Reduction Co., 27 Wash. 63, 67 P. 391 (1901). Priestley Mining involved an action between two mining companies with competing claims of ownership to mining claims. In holding that there had been a forcible detainer, this court concluded that the defendant had entered the land under a wrongful claim of ownership and it affirmed the trial court's order restoring the plaintiff to possession of the property. Priestley Mining simply provides no support for the insurers' argument that there is a tort of wrongful entry. Indeed, one will search the opinion in vain for the words "wrongful entry." In Davis, although the court did use the term "wrongful entry," it did not indicate that it was a separate tort. Finally, Chappell actually supports the County's position. In that case, the court was faced with an action against a purchaser of timber for damages for conversion of the timber. The only issue in that case was whether the plaintiff was entitled to treble damages. Pertinent to this case, this court discussed whether the defendant's intent was material to the jury's determination of whether the taking of timber was wrongful. Chappell, 27 Wash. at 66-67, 67 P. 391. It is clear that we did not distinguish there between the terms "trespass" and "wrongful entry" and, in fact, characterized the wrongful entry of the seller as a trespass.
Pertinent to this issue, we observe that numerous federal courts have, in applying state law, determined that a trespass is equivalent to a wrongful entry. See, e.g., Scottish Guar. Ins. Co. v. Dwyer, 19 F.3d 307, 311-12 (7th Cir.1994) ("We think a reasonable person in the position of Dwyer [the insured] would have understood the term `wrongful entry' in Coverage B to include such an unintentional trespass."); Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037, 1041 (7th Cir.1992) ("Both Missouri and Illinois courts recognize that wrongful entry is substantially similar to trespass," and hence trespass claim would be covered by personal injury provisions), reh'g denied (1993); Titan Holdings Syndicate, Inc. v. City of Keene, 898 F.2d 265, 272 (1st Cir.1990) (claim for wrongful entry "most closely resembles that of trespass" under New Hampshire law); Blackhawk-Central City Sanitation Dist. v. American Guar. & Liab. Ins. Co., 856 F.Supp. 584 (D.Colo.1994) (wrongful entry is substantially analogous to trespass and, hence, trespass claims arising from environmental contamination are covered under Colorado law).
In sum, we conclude that an average purchaser of insurance would think that a trespass was a wrongful entry. Furthermore, even if we deemed the term "wrongful entry" to be ambiguous, the result would be the same in that any ambiguity must be construed against the insurer.

B. Other Invasion of the Right of Private Occupancy
Kitsap County contends, additionally, that even if a trespass is not a wrongful entry it is an invasion of another's right of private occupancy. Since that phrase, like the phrase "wrongful entry," is undefined in the policy, it must be given its plain, ordinary, and popular meaning which can be derived by reference to the dictionary.
Significantly, an "invasion" is defined as an "act of ... encroachment or trespassing." Opening Br. of Pl. at 39 (quoting WEBSTER'S NEW WORLD DICTIONARY 740 (1976); WEBSTER'S DELUXE UNABRIDGED DICTIONARY 965 (1979); AMERICAN HERITAGE DICTIONARY 688 (1979)). Occupancy is defined as the "period during which one owns, rents, or uses certain premises or land." See Opening Br. of Pl. at 39 (quoting AMERICAN HERITAGE DICTIONARY 908 (1979)); AMERICAN HERITAGE DICTIONARY 1251 (3d ed.1992) (emphasis added). Something is "private" if it is "[s]ecluded from the sight, presence or intrusion of others." See *1185 AMERICAN HERITAGE DICTIONARY 1442 (3d ed.1992) (emphasis added).
It would seem apparent from the above definitions that the plain, ordinary, and popular meaning that an average purchaser of insurance would ascribe to the phrase "other invasion of the right of private occupancy" would include a trespass on or against a person's right to use premises or land that are secluded from the intrusion of others. Indeed, this view of the phrase would be consistent with a definition of trespass found in Black's Law Dictionary at 1509 (1990), "[a]n unlawful interference with one's ... property."
Again, the insurers do not contend that the words in the phrase do not have the meaning advanced by Kitsap County. Rather, they assert that "fundamental principles of contract interpretation require that this phrase be limited to offenses, like wrongful entry and eviction, tat involve (1) physical actions taken by human beings resulting in (2) the wrongful dispossession of property." Br. of Certain Insurers at 41. The principle they refer to is the doctrine of ejusdem generis which provides that when a general term follows a series of specific terms, the general term should not be given its broadest possible meaning, but rather should extend only to matters of the same general class or nature as the terms specifically enumerated. See Lombardo v. Pierson, 121 Wash.2d 577, 583, 852 P.2d 308 (1993) ("the term `other matters' is given a meaning similar to the specific items listed").
We are not persuaded that the doctrine is applicable here for two reasons. First, as we have indicated above, we do not give the term "wrongful entry" the limited meaning that the insurers have urged us to do. In that respect, our thinking coincides with that of the Seventh Circuit in Pipefitters, which concluded that because intent is not a requisite of wrongful entry "the principle of ejusdem generis does not limit the catchall phrase `other invasion of the right to private occupancy' to conduct undertaken with a motive to possess or deprive another of possession." Pipefitters, 976 F.2d at 1042.
Our second reason for rejecting the insurers' argument is more fundamental. It is based on our recognition of the general principle that we set out above to the effect that we should strive to give effect to every clause in an insurance policy. If we were to apply the doctrine of ejusdem generis in the way suggested by the insurers, we would be rendering the general term meaningless contrary to the aforementioned rule of construction. See City of Des Moines v. Hemenway, 73 Wash.2d 130, 136, 437 P.2d 171 (1968). We agree with Kitsap County, in this regard, that the phrase "other invasion of the right of private occupancy" is intended to encompass torts that are not encompassed by the terms "wrongful entry" and "wrongful eviction." Under the insurers' narrow reading of the phrase we are hard pressed to conceive of any tort, other than the two specifically mentioned, that would fall within the scope of the more general term. We cannot believe that this was intended by the insurer or that an average purchaser of insurance would think that this was intended.
H. Is a Claim of Nuisance or Other Interference a Claim for Wrongful Entry or the Invasion of the Right of Private Occupancy?
Kitsap County also contends that the nuisance claim that was maintained against it is equivalent to a claim for wrongful entry and other invasion of the right of private occupancy. We agree. We reach that conclusion for the same reasons that we concluded a trespass claim is a claim for personal injury. A nuisance is an unreasonable interference with another's use and enjoyment of property, whereas a trespass is an invasion of the interest in exclusive possession of property. Bradley v. American Smelting & Ref. Co., 104 Wash.2d 677, 685, 709 P.2d 782 (1985), answer to certified question conformed to, 635 F.Supp. 1154 (W.D.Wash.1986). There is little substance to the historical distinction between trespass and nuisance where pollution is involved. Bradley, 104 Wash.2d at 684, 709 P.2d 782. The reason, as the Restatement (Second) of Torts explains is that an "invasion of the possession of land normally involves some degree of interference with its use and enjoyment." RESTATEMENT (SECOND) OF TORTS § 821D cmt. e (1979). In light of the similarity *1186 between a nuisance and a trespass, what we have indicated above in regard to trespass is equally applicable to nuisance.

I. Do the Claims Against the County for Trespass, Nuisance, and Interference Allege Wrongful Eviction?
Finally, the insurers contend that the claims against Kitsap County for nuisance, trespass, and interference with use and enjoyment of property are not analogous to a claim for wrongful eviction. With this contention we agree. As we have noted above, in six of the subject policies the definition of personal injury includes only "wrongful eviction" and does not include "wrongful entry" or "other invasion of the right of privacy." The County provides scant argument for the proposition that the claims against it sounding in nuisance, trespass, or interference with use and enjoyment of property fall within the rubric of "wrongful eviction." It suggests only that the claims against the County by tenants at the Norseland site, or by their landlord, were "in reality" claims arising from the constructive eviction of the tenants and, hence, are covered under the personal injury provisions of the policy as a "wrongful eviction." Opening Br. of Pl. at 48.
The insurers who provided the six policies that only include wrongful eviction within the personal injury coverage respond in several ways. They first note that none of the plaintiffs in the three actions against the County have alleged that the County had wrongfully evicted them. Indeed, the record we have been furnished bears this out. It shows that in one of the actions by the past and present residents of the mobile home park the allegation was that the contaminants and foul odors emanating from the disposal sites had affected their health and had interfered with their use of the property. In the other action by residents, the plaintiffs sought damages for property devaluation and costs of future medical monitoring as well as injunctive relief. In the action maintained by the mobile home park owner and the possessors of interests in commercial property, only damages for injury to person and property were sought. While some of the former mobile home park residents indicated that they left the property for health reasons, there was no assertion that they were ousted by intentional conduct of the County. See Cline v. Altose, 158 Wash. 119, 127, 290 P. 809, 70 A.L.R. 1471 (1930) (An "eviction" requires "a physical ouster of the tenant by the landlord, or some act done by him on the premises, with the intent of depriving the tenant of the enjoyment and occupation of the whole or part of the same.") (quoting DeWitt v. Pierson, 112 Mass. 8, 10 (1873)).
The insurers also make the point that no landlord-tenant relationship existed between Kitsap County and the plaintiffs.[13] This point is significant because the cases cited by the insurers suggest that a constructive eviction occurs only "when there is an intentional or injurious interference by the landlord ... which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially impairs such beneficial enjoyment." Myers v. Western Farmers Ass'n, 75 Wash.2d 133, 134-35, 449 P.2d 104 (1969); see also Priestley Mining, 41 Wash.2d 101, 247 P.2d 688. The County has not cited any authority to contradict this point.
Finally, the insurers point out that before there can be a constructive eviction, a tenant must "give the landlord notice of the act or condition complained of and an opportunity to remove or correct the condition." Pague v. Petroleum Prods., Inc., 77 Wash.2d 219, 221, 461 P.2d 317 (1969). Even assuming that Kitsap County was a landlord to all or some of these plaintiffs, there is no evidence that notice was given to the County to correct the complained of condition.
In sum, we are satisfied that the complaints against Kitsap County for trespass, nuisance, and interference with use and enjoyment of property do not constitute the offense of wrongful eviction.

*1187 IV. Conclusion
As we observed at the outset of this opinion, the question that has been certified to us is: "Whether the claims against Kitsap County constitute `personal injury' under each of the subject liability insurance policies." Doc. 603 at App. A. As we have indicated above, we answer yes to the question insofar as it relates to policies that provide coverage for a personal injury that arises from a "wrongful entry" or "other invasion of the right of private occupancy." We answer the question no as it relates to policies that provide coverage only for a personal injury arising from a "wrongful eviction." Because the district court has not asked us whether the trespass and nuisance claims against the County were time-barred or whether the pollution exclusions applicable to the coverage for property damage and bodily injury bars recovery, we have not answered those questions. Furthermore, because none of the parties or amici who have submitted briefs to this court have addressed the significance of that additional language "violation of property rights" in policy no. PEC 400870 issued by the Colonial Penn Insurance Company, we decline to consider the issue. See State v. Olson, 126 Wash.2d 315, 318, 893 P.2d 629 (1995).
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, TALMADGE and SANDERS, JJ., concur.
NOTES
[1] Two of the suits, Sunshine Properties, Inc. v. Port of Bremerton, No. C93-5461-WD, and Brouhard v. Port of Bremerton, No. C93-5460(R)WD, were initially commenced in federal court. The third lawsuit, Coleman v. Port of Bremerton, No. 93-2-08670-9, was initially commenced in the Superior Court of the State of Washington for King County.
[2] Insurance Company of North America, policy no. AGP DO 3164937, Doc. 436 at Ex. A (tab 7) at 1, 10.
[3] Interstate Fire & Casualty Company, policy no. 155-C06265; Interstate Fire & Casualty Company, policy no. 155-C11272; Protective National Insurance Company of Omaha, policy no. ZA180-76-02; Protective National Insurance Company of Omaha, policy no. ZA180-82-55; Colonial Penn Insurance Company, policy no. PEU400133; National Union Fire Insurance Company of Pittsburgh, policy no. 9002417. Following oral argument before this court, Kitsap County and the National Union Fire Insurance Company stipulated to the dismissal of Kitsap County's suit against that Insurer with prejudice.
[4] Protective National, policy no. UB180-66-07; Protective National Insurance Company of Omaha, policy no. UB294-54-31; Lloyd's, policy no. 522/XXXXXXXXX; Harbor Insurance Company, policy no. HI211710; Stonewall Insurance Company, policy no. D11553; Stonewall Insurance Company, policy no. 31000321.
[5] Colonial Penn Insurance Company, policy no. PEC 400870.
[6] The quoted language is taken from the policy of Transamerica Insurance Company, policy no. 5822181, at KC2 024236.
[7] Because we were not provided with complete copies of the insurance policies in question, we have been unable to ascertain the exact language of the pollution exclusions applicable to the property damage and bodily injury provisions of the various policies.
[8] Br. of Certain Insurers at 7.
[9] All of the insurance companies that issued policies to Kitsap County have either submitted their own brief or joined in the "Brief of Certain Insurers." In addition, three other insurance companies, Safeco Insurance Company of America, Mutual of Enumclaw Insurance Company, and American States Insurance Company, as well as the Insurance Environmental Litigation Association, have presented amicus curiae briefs.
[10] The other Washington cases that are cited by the insurers are unpublished decisions of trial courts. Unpublished opinions have no precedential value and, therefore, we have not considered them. See State v. Bays, 90 Wash.App. 731, 954 P.2d 301 (1998).
[11] The Morton court observed that the Supreme Court of Washington has not addressed this issue. Morton, 666 N.E.2d at 1175.
[12] The insurers also make reference in a footnote to appendix B of their brief in which they cite cases from other jurisdictions which they say "have overwhelmingly rejected" the argument that the County makes and support their position that pollution liability claims are not covered under personal injury provisions of the policies in question. Br. of Certain Insurers at 20 n. 8. The 79 cases cited in the appendix, more than half of which are unpublished decisions of the state and federal trial courts, we do not consider because they are not cited or discussed in the body of their brief. RAP 10.3(a)(2), (5).
[13] The County apparently owned the Norseland site until April 1963 when it transferred ownership of the property to the Port of Bremerton. There is no suggestion, however, that any of the plaintiffs were residents of the property in question prior to April 1963.