PHILIPS ORAL HEALTHCARE INC, a Washington Corporation, aka Optiva Corporation, Plaintiff-counter-defendant—Appellant,

v.

FEDERAL INSURANCE COMPANY, an Indiana Corporation, Defendant-counter-claimant—Appellee.

No. 03–35019.

D.C. No. CV–98–01211–BJR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 2003.

Decided Dec. 17, 2003.

Steven W. Hale, Esq., John S. Rossiter, Jr., Perkins Coie LLP, Seattle, WA, for defendant–Appellant.

Thomas Martin Jones, Esq., Christopher L. Neal, Esq., Cozen O'Connor, Seattle, WA, for claimant–Appellee.

Before NOONAN, WARDLAW, and PAEZ, Circuit Judges.

## MEMORANDUM *

Philips Oral Healthcare, Inc. ("Philips"), formerly known as Optiva Corporation, appeals the district court's grant of summary judgment to Federal Insurance Company ("Federal") in an insurance coverage dispute. Philips alleges that Federal has a duty to indemnify it for the amount of its second settlement with Gillette in a false advertising dispute regarding the Sonicare toothbrush. We have jurisdiction pursuant to 28 U.S.C. § 1291, and reverse.

Federal issued six commercial general liability insurance policies to Philips for consecutive one-year periods beginning on January 6, 1993 and ending on January 6, 1999. The Federal policies provided coverage to Philips for lawsuits arising from advertising injury among other things. From 1993 to 1996, advertising injury was defined in relevant part as follows:

ADVERTISING INJURY

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

means injury arising solely out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

1. oral or written publication of material that slanders or libels a person or organization *or disparages a person's or organization's goods, products or services;*

From 1996 to 1999, the italicized language from the definition above was deleted, and the policies defined advertising injury more narrowly as "advertising material that slanders or libels a person or organization."

The insurance policies became relevant after the Gillette Company filed two lawsuits against Philips in the United States District Court for the Southern District of New York for injuries arising from Philips' advertisements for its Sonicare power toothbrush. Sonicare competes directly with Gillette's Braun Oral–B Plaque Remover. Gillette filed its first suit ("G–1"), which is only indirectly involved in the current case, in 1998. G–1 claimed, among other things, that Philips had falsely represented that use of Oral–B contributed to heart disease and other life threatening conditions. The suit ended with a May 1999 jury verdict in Gillette's favor.

Gillette filed its second suit ("G–2"), the underlying case directly at issue in the present insurance coverage dispute, against Philips on February 2, 1999. In its G–2 complaint, Gillette charged Philips with violating section 43(a) of the Lanham Act, which creates liability for misrepresentations about one's own products as well as for misrepresentations about competitors' products. Specifically, in the First Claim for Relief, Gillette alleged:

17. Optiva's commercial advertising claims relating to alleged "sonic" or "beyond the bristles" capabilities of sonicare constitute false and misleading descriptions of fact, or false and misleading representations of fact, which misrepresent the nature, characteristics, and qualities of the sonicare product, and the nature, characteristics, and qualities of the Braun Oral–B Plaque Removers, in violation of § 43(a) of Lanham Act.

. . .

19. Gillette has been and is likely to be damaged by Optiva's false and misleading representations concerning the Braun Oral–B Plaque Removers.

20. Optiva's false and misleading commercial advertising claims are likely to mislead and deceive consumers into purchasing the sonicare powered toothbrush instead of the Braun Oral–B Plaque Removers, in that consumers will believe incorrectly that sonicare has "sonic" or "beyond the bristles" cleaning capabilities that Braun Oral–B Plaque Removers lack.

. . .

22. Gillette has suffered and will continue to suffer irreparable injury by reason of the false and misleading statements by Optiva about the Braun Oral–B Plaque Removers, and the diminution of good will caused by the sonicare advertising.

Philips sued Federal in the United States District Court for the Western District of Washington after Federal denied that it had a duty to defend or indemnify Philips in G–1. After Gillette filed G–2, Philips amended its complaint against Federal to seek declaratory relief that Philips had a duty to defend Philips against Gillette in G–2. The G–1 coverage dispute between Philips and Federal ended on June 30, 2000 through a combination of a summary judgment order by the district court and a settlement agreement between the parties. On August 18, 2000, the district court held that Federal had a duty to defend Philips in G–2. Although the district court indicated that the G–1 and G–2

suits addressed different ad campaigns, some parts of the appellate record suggest there is overlap of the advertisements at issue in G–1 and G–2.

Gillette and Philips settled G–2 on December 13, 2001. The terms of the settlement are confidential. Following the settlement, Philips and Federal filed cross motions for summary judgment on Federal's duty to indemnify Philips for the G–2 settlement. On November 5, 2002, the district court granted Federal's motion for summary judgment on indemnity, holding that "Philips did not settle any claims for 'advertising injury' as defined in its policies." The district court denied Philips' motion for reconsideration on December 13, 2002.

We review de novo both the district court's grant of summary judgment, *see United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir.2003), and its interpretation of insurance policy language, *see Roller v. Stonewall Ins. Co.*, 115 Wash.2d 679, 801 P.2d 207, 208–09 (1990). When the lawsuit underlying the indemnity claim is settled rather than tried, the insurer's liability depends on "the claims actually settled, which are defined by the allegations in the complaint. We construe the complaint liberally and are not bound by its formal language." *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1433 (9th Cir.1995) (citations omitted). Gillette's G–2 complaint charges Philips with violating section 43(a) of the Lanham Act, which covers not only misrepresentations about one's own products but also misrepresentations about "the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). More specifically, the G–2 complaint claims that Philips' advertising claims "misrepresent the nature, characteristics, and qualities of the sonicare product, and the nature, characteristics, and qualities of the

Braun Oral–B Plaque Removers;" that "Gillette has been and is likely to be damaged by [Philips'] false and misleading representations concerning the Braun Oral–B Plaque Removers;" and that "Gillette has suffered and will continue to suffer irreparable injury by reason of the false and misleading statements by [Philips] about the Braun Oral–B Plaque removers . . . ." G–2 thus unmistakably alleges that Philips made false and misleading statements about Oral–B products.

From 1993 to 1996, the definition of "advertising injury" in Philips' insurance policies covered product disparagement. Beginning in 1996, the language covering product disparagement was deleted from the definition of "advertising injury." Under Washington law, "The court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage." *Kitsap County v. Allstate Ins. Co.*, 136 Wash.2d 567, 964 P.2d 1173, 1178 (1998). "If policy language is clear and unambiguous, a court may not modify the insurance contract or create an ambiguity." *Id.* The difference between the two sets of policies is clear and unambiguous; only slander or libel of a person or organization was covered under the 1996 to 1999 policies and not product disparagement.

Because of the change in the scope of insurance beginning with the 1996 policy, Federal does not have a duty to indemnify Philips for any part of the G–2 settlement that is attributable to ads that aired after January 6, 1996. When the G–2 complaint is construed liberally in accordance with *Nordstrom*, it alleges product disparagement but not slander or libel. Because the G–2 complaint clearly alleges product disparagement, Federal has a duty to indemnify Philips for advertising injury to Gillette arising from any Philips advertisements from 1993 to 1996 that were at issue

in G–2. We cannot tell from the allegations what ads from this period, if any, were included in that suit. Some ads from this period were the subject of G–1 and were covered by the jury verdict and Federal's settlement. On remand, it is Philips' burden to go beyond the allegations in G–2 and show what advertising from 1993 to January 6, 1996 was at issue in G–2 and not covered by the G–1 settlement.

Accordingly, the judgment of the district court is REVERSED, and the case is REMANDED for proceedings consistent with this disposition.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.